# United States Court of Appeals
## For the First Circuit

No. 19-1658

ITYX SOLUTIONS AG,

Plaintiff, Counter Defendant, Appellee,

ITYX SYSTEMWICKLUNG OHG; ITYX TECHNOLOGY GMBH; SULEYMAN ARAYAN;
HEIKO GROFTSCHIK,

Counter Defendants,

v.

KODAK ALARIS, INC.,

Defendant, Counter Plaintiff, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

_____

Before

Howard, Chief Judge,
Lynch and Barron, Circuit Judges.

_____

Pieter Van Tol, with whom Garima Malhotra, Marisa H. Lenok,
Hogan Lovells US LLP, Paul R. Mastrocola, Andrea L. Martin, and
Burns & Levinson LLP were on brief, for appellant.
Johnathan K. Levine, with whom Elizabeth K. Levine, Pritzker
Levine LLP, Scott R. Magee, and Morse, Barnes-Brown & Pendleton,
PC were on brief, for appellee.

February 27, 2020

**LYNCH**, <u>Circuit Judge</u>.  This appeal primarily concerns attacks on a verdict against Kodak Alaris, Inc. ("Kodak") based on the jury finding that Kodak was in breach of its contractual obligation to ITyX Solutions AG ("ITyX").  Judgment was entered against Kodak in the sum of $9,211,699.20, including prejudgment interest.  Kodak also challenges whether ITyX had what Kodak called "standing" to bring a breach of contract claim, the rulings the district court made following the verdict, the district court's calculation of prejudgment interest, and the denial of Kodak's motion for a new trial.

In brief, Kodak contracted with ITyX to sell ITyX's intelligent document recognition ("IDR") software as part of a Kodak-branded software.  The contract allowed either party to terminate the agreement following a material breach by the other party and also prohibited Kodak from reentering the IDR business within two years of Kodak's "abandon[ing] the IDR market."  The parties' relationship soon soured, and Kodak purported to terminate the contract and purported to exit the IDR business.  ITyX brought suit against Kodak for breach of contract and to enjoin Kodak from reentering the IDR business.  After ITyX filed this suit, and within two years of Kodak purporting to terminate the agreement, Kodak partnered with a new IDR producer to market and sell a new Kodak-branded IDR product.

- 3 -

The jury verdict awarded $7,466,045 in damages to ITyX. Kodak disputed that the verdict actually found that Kodak had breached the contract. It argued that the jury must have necessarily found that it was ITyX which breached, and that ITyX had breached the covenant of good faith and fair dealing. The district court correctly rejected this argument, as well as Kodak's various "standing" and damages arguments. We reject all challenges and affirm, except as to the calculation of prejudgment interest. As to interest, we alter the date used and remand.

I.

We describe the factual background of the parties' claims, and then turn to the procedural history of the appeal.

A. <u>Factual Background</u>

ITyX, a German software company, produces IDR software, which interprets and extracts text from documents and then organizes such content for a user. ITyX is wholly owned by ITyX Technology, a German limited liability company. A German partnership, ITyX OHG, owns the majority of ITyX Technology. ITyX OHG is composed of partners Süleyman Arayan and Heiko Groftschik, both citizens of Germany. Arayan is also the CEO of ITyX. Kodak Alaris Holdings ("KAH") wholly owns Kodak, an American company.

1. <u>The Master and PS Agreements</u>

In 2011, ITyX began business discussions with Eastman Kodak Company ("EKC") and, on January 18, 2012, entered into a

- 4 -

contract called the "Master Agreement." Just a day later, EKC filed for bankruptcy. In September 2013, Kodak assumed all of EKC's rights and obligations under the Master Agreement.

The Master Agreement defines the parties' contractual relationship. Its Preamble states that the parties "decided to enter into a strategic partnership where ITyX [would] license [the IDR software] to Kodak and Kodak [would] rebrand and market [such software]." The Agreement defines the Kodak-branded, IDR product (the "Kodak Product") as "the product, product family, and components of products, . . . that Kodak intends to distribute to End Users and will include or incorporate the Licensed Software . . . supplied by ITyX and as developed pursuant to this Agreement."

The Master Agreement had an initial term of five years, and the parties believed that it would take about three years to bring the software to market. Unless terminated, the Master Agreement automatically renewed in two-year increments.

The Master Agreement provides that either Kodak or ITyX could terminate the Master Agreement

> after a material breach by the other Party upon written notice to the defaulting party ("Default Notice") specifying the default in reasonable detail, unless the defaulting party cures the default within 30 days after receipt of the Default Notice or, if such default cannot be cured within such time, the defaulting Party does not promptly start diligently and continuously in good faith to cure the default.

ITyX warranted that it either owned the copyright of the IDR software or "ha[d] and [would] retain the authority to enter into . . . this Agreement and to grant licenses . . . to Kodak." The Agreement also created various exclusivity obligations, including that Kodak would be the sole distributor of the Kodak Product and would not "develop a product functionally equivalent to the Kodak Product," i.e., an IDR product that would compete with ITyX's software. Although the Master Agreement authorized Kodak to exit "in its sole good faith business judgment" the IDR business (and so discontinue the marketing and sale of the Kodak Product), Kodak could not sell an IDR product not supplied by ITyX within two years of the exit date.

In the event of a breach, the Master Agreement allows, but does not require, the non-breaching party to seek specific performance from the breaching party.

The Master Agreement provided that ITyX would "act as an independent contractor" of Kodak. The Master Agreement also incorporates any "Statement[s] of Work" creating additional "specifications and conditions" into which Kodak and ITyX would enter subsequently. New York substantive law governs the Agreement.

On June 25, 2015, Kodak and ITyX entered into another contract, the Professional Services Transfer Pricing Agreement ("PS Agreement"). The parties then amended the PS Agreement on

August 20, 2015 (the "PS Amendment"). Together, these "PS Agreements" specified that Kodak would be solely responsible for sales and marketing, and ITyX would provide the technology necessary to deliver and support the software.

2. The Investment Framework Agreement Among Related Entities

More than two years after Kodak and ITyX entered into the Master Agreement, a group of related entities, KAH, ITyX OHG, ITyX Technology, and Arayan entered into a June 2014 Investment Framework Agreement ("IFA"). Under the IFA, KAH would acquire 25.1% of ITyX Technology. ITyX Technology, in turn, was to acquire ITyX and another company and KAH would invest €12.6 million into ITyX Technology via a series of payments over a sixteen-month period. The IFA also authorized ITyX Technology, once per quarter, to request up to two million euros in additional investment funds from KAH to "support . . . acquisitions or similar strategic investments."

The IFA provides that if KAH failed to make a required payment for more than thirty days, then ITyX OHG or ITyX Technology could exercise a "call option." The call option, if exercised, would allow ITyX OHG or ITyX Technology to purchase all ITyX

Technology shares held by KAH in return for a payment of one euro and a waiver of KAH's outstanding IFA obligations.

### 3. KAH Purports to Terminate the IFA and Kodak Purports to Terminate the Master Agreement

In June 2015, KAH did not make one of its required payments at the required time. In response, on November 23 or 24, 2015, ITyX OHG gave notice to KAH that it was exercising the call option. The notice stated that this decision was based on both the missed payment and on an earlier refusal by KAH to invest another two million euros into ITyX Technology pursuant the IFA.[1]

On December 18, 2015, KAH sent to ITyX OHG and ITyX Technology a letter stating that it would not comply with the call option, and that it was terminating the IFA for cause and was withdrawing as a shareholder of ITyX Technology. Also on December 18, 2015, Kodak sent a letter to ITyX asserting that the exercise of the call option effected a material breach of the Master Agreement, and announced Kodak was terminating the Agreement. The letter also stated that, if the termination was ineffective, Kodak was abandoning the IDR business for a two-year period following the exit date. A jury would later find that, by selling its Actionable Intelligence Management ("AIM") platform, an IDR

---

[1] Kodak contends that it missed the payment inadvertently and, immediately upon learning of this oversight, paid the required amount. The parties also dispute whether any such "strategic investment[]" existed. These issues do not affect the resolution of this appeal.

software, Kodak reentered the IDR business in violation of that two-year period.

B.   Procedural History

On February 15, 2016, ITyX filed suit against Kodak for damages for breach of contract and for declaratory and injunctive relief to the effect that the Master Agreement was still in effect and Kodak could not develop or sell products that competed with the Kodak Product.  ITyX moved for a preliminary injunction against Kodak to prevent it from selling various IDR products.  The district court, finding no risk of irreparable harm, denied the motion.

On April 15, 2016, Kodak moved to dismiss the action or stay the proceedings until two related lawsuits in Germany were resolved.[2]  The district court denied the motion, noting that it was not certain that parties and/or contracts in the German proceedings were "sufficiently aligned," or that the legal issue were sufficiently alike.

On February 21, 2018, Kodak moved for summary judgment on all claims, arguing primarily that ITyX lacked standing to bring

---

[2]     ITyX represented to the district court that, on March 20, 2018, the District Court of Frankfurt am Main dismissed the German lawsuit.  Noting an ongoing appeal of that dismissal, the district court did not treat the German decision as final.

the suit.[3]  Kodak also argued that, in terminating the Master Agreement on December 18, 2015, it had validly terminated the PS Agreements.  It argued in the alternative that the purported termination of the Master Agreement started a twelve-month notification period required to terminate PS Agreements.  The district court reasoned that, because the PS Agreement provided for a minimum duration of twenty-four months and did not expressly premise its duration on that of the Master Agreement, that the plain language of the PS Agreement did not support Kodak's argument and denied summary judgment.

The parties then went to trial on November 5, 2018,  and, on November 26, 2018, the jury reached a verdict in ITyX's favor. The jury made the following findings in response to special questions as to ITyX's breach of contract claims:  (1) The "Master Agreement [was] a valid contract between [Kodak] and [ITyX]"; and (2) Kodak did not "breach the Master Agreement and/or PS Agreements by terminating them on December 18, 2015."  On the other hand, the jury found against Kodak that:  (3) Kodak under the Master Agreement "reenter[ed] the IDR business represented by the Kodak

---

[3]   Kodak also moved for partial summary judgment on various issues and ITyX moved for both judgment on the pleadings and partial summary judgment.  The district court granted summary judgment on one minor, undisputed issue and denied summary judgment and judgment on the pleadings as to the remaining issues.  For brevity, we elaborate on only the summary judgment issues relevant to the instant appeal.

IDR Product within two years of abandoning that business on December 18, 2015";[4] (4) Kodak "breach[ed] the PS Agreements by not making quarterly payments due during the minimum term of those agreements from January 1, 2016 through at least June 1, 2017"; (5) Kodak's "breach of its contractual obligations [was not] excused"; and (6) ITyX had "been damaged as a result of [Kodak's] breach of its contractual obligations" and that $7,466,045 would "fairly compensate ITyX . . . for its damages for [Kodak's] breach of its contractual obligations."  The parties agree that this sum in the verdict was the result of the addition of $872,529 in damages for the breach of the Master Agreement and $6,593,516 in damages for missed payments under the PS Agreements.

As to Kodak's breach of contract counterclaim, the jury found that ITyX did not "breach the Master Agreement, the PS Agreements, and/or the Statements of Work by failing to comply with the terms of those agreements."  The jury also found that no fiduciary relationship existed between Kodak and ITyX.  The jury rejected both of Kodak's tortious interference claims and awarded no damages to Kodak on any of its claims.

---

[4]     Because of the agreed-on verdict form, the jury did not answer whether this violation of an explicit term of the Master Agreement was a breach, but the district court found this violation was a breach, ITyX Solutions, AG v. Kodak Alaris Inc., No. 16-cv-10250-ADB, 2019 WL 1005497, at *4-5 (Mar. 1, 2019), and that finding is supported by the sum of the jury's award, which included sums for this breach.

On March 1, 2019, the district court ruled on the parties' claims for declaratory judgment and an injunction preventing Kodak from reentering the IDR business. The court issued declaratory judgments that Kodak did not properly terminate the Master or PS Agreements on December 18, 2015, and Kodak materially breached the Master Agreement's Exit Provision by reentering the IDR business by marketing the AIM platform. Finding that, following Kodak's breach, ITyX elected to terminate the Agreements and seek damages, the court held that the Agreements no longer bound both parties. Accordingly, the court denied the claim for injunctive relief as moot. On the same day, the district court entered final judgment in favor of ITyX. In its judgment, the court awarded $1,745,654.20 in prejudgment interest and post-judgment interest at the rate of 2.55% on the total damages award.

On March 25, 2018, Kodak moved for judgment as a matter of law, or a new trial and/or amendment to the district court's March 1 order. Kodak raised what it called its standing argument from its summary judgment motion. As to its motion for judgment as a matter of law, Kodak also argued that Kodak did not breach any contract, ITyX breached the covenant of good faith and fair dealing, and that the jury verdict supports this. As a fallback argument, Kodak argued that the evidence was insufficient to support the jury verdict that ITyX proved its claims of breach or of the amount of damages. Turning to its motion for a new trial

on the merits (or, in the alternative, on damages), Kodak presented the same arguments outlined above as well as arguments that the verdict form confused the jurors and ITyX's counsel committed trial misconduct. The district court rejected Kodak's arguments and denied the motion. This appeal followed.

II.

We review questions of law, including the issue of standing, de novo. Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012) (quoting Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006)). A denial of judgment as a matter of law is also reviewed de novo, but applying the same standard as the district court. That is, we examine all evidence "in the light most favorable to the nonmoving party, drawing all possible inferences in its favor. . . . We do not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co., 144 F.3d 35, 42 (1st Cir. 1998) (internal citations omitted). We do not disturb the jury verdict if, "viewing the evidence in the light most favorable to the verdict, a rational jury could find in favor of the party who prevailed." Gillespie v. Sears, Roebuck & Co., 386 F.3d 21, 25 (1st Cir. 2004). The determination under state law of prejudgment interest is also reviewed de novo. See Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 145–46 (1st Cir. 2009) (citing

- 13 -

R.I. Charities Tr. v. Engelhard Corp., 267 F.3d 3, 5 (1st Cir. 2001)).

The denials of the motion for a new trial and to amend findings and/or the judgment are reviewed for abuse of discretion. Cantellops v. Alvaro-Chapel, 234 F.3d 741, 744 (1st Cir. 2000); Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 125 (1st Cir. 1990).

A. Kodak's Attacks on District Court Rulings

1. Kodak's Argument that ITyX Lacked Standing to Bring the Suit Is Meritless

Kodak argues that ITyX does not have Article III standing, and so the district court erred by not granting summary judgment or judgment as a matter of law in Kodak's favor, and erred by deferring its decision on standing until after the jury decided material, disputed facts about the meaning of the contract. Kodak argues that ITyX did not own or have the distribution rights to the IDR software and so could not grant a license to Kodak, as required by the Warranty of Title section in the Master Agreement. In consequence, Kodak contends, ITyX could not enforce the Master Agreement and so, in its view, it follows that ITyX lacked standing. Kodak is wrong for several reasons.

Standing requires that a plaintiff satisfy "three elements: injury in fact, traceability, and redressability."

- 14 -

<u>Kerin</u> v. <u>Titeflex Corp.</u>, 770 F.3d 978, 981 (1st Cir. 2014) (citing <u>Lujan</u> v. <u>Defs. of Wildlife</u>, 504 U.S. 555, 560-61 (1992)).

ITyX's complaint alleged the existence of contracts to which it was a party, and a concomitant breach, and damages. ITyX was a party to the contract. That Kodak defends, on the grounds that it believed ITyX breached the Warranty provision and that the contract did not afford ITyX a right to enforce it, does not create an issue of Article III standing. Kodak does not cite any cases that a defense that a party to a contract has violated a provision of that contract precludes Article III standing.

The only standing cases Kodak cites involve very different facts, in which non-parties sought to sue on contracts as third-party beneficiaries. <u>See</u> <u>Miree</u> v. <u>DeKalb Cty.</u>, 433 U.S 25, 29 (1977) ("The relevant inquiry is a narrow one: whether petitioners as third-party beneficiaries of the contracts have standing to sue respondent."); <u>AT&T Mobility, LLC</u> v. <u>Nat'l Ass'n for Stock Car Auto Racing, Inc.</u>, 494 F.3d 1356, 1359-61 (11th Cir. 2007) (deciding whether a "non-party" had suffered an injury in fact by looking to whether it had a "legally protected interest" that was invaded). ITyX is not a non-party.

Traceability requires "'a causal connection' . . . between the injury and the challenged conduct." <u>Belsito Commc'ns, Inc.</u> v. <u>Decker</u>, 845 F.3d 13, 21 (1st Cir. 2016) (quoting <u>Lujan</u>, 504 U.S. at 560-61)). Here, the evidence adequately supported

- 15 -

ITyX's allegation that Kodak discontinued contractual payments and reentered the IDR market which caused ITyX financial injury. Redressability requires "that the injury will likely be redressed by a favorable decision." Id. (alteration and quotation marks omitted) (quoting Lujan, 504 U.S. at 560–61)). Money damages redress the economic injury ITyX alleged, and so this prong is met. See 24 Richard A. Lord, Williston on Contracts § 64:1 (4th ed. 2019) ("The primary if not the only remedy for injuries caused by the nonperformance of most contracts is an action for damages for the breach . . . ."). ITyX plainly had Article III standing to bring this suit.

2. We Reject Kodak's Appellate Arguments About the PS Agreements' Minimum Duration

Kodak argues that the district court also erred in holding "that the PS Agreements remained in effect for two years after inception," that is, until at least June 1, 2017. This argument is both waived and meritless.

In its Rule 50(a) motion, Kodak did not object to the district court's summary judgment conclusion that the PS Agreements had a minimum term of twenty-four months. Kodak has waived this argument. At most, Kodak made the different argument that ITyX could not show damages and no damages existed. That different argument concerned the sufficiency of evidence of damages, not the district court's interpretation of the PS

- 16 -

Agreement.  See Ji v. Bose Corp., 626 F.3d 116, 127-28 (1st Cir. 2010).

Even assuming dubitante that Kodak preserved this argument, the argument still fails.  The PS Agreements remained in effect until at least June 1, 2017.  The PS Agreements state that "[t]he [PS] [A]greement has a minimum term of 24 months and is automatically renewable for another year unless a cancellation notice is given."  The cancellation language on which Kodak's argument turns does not alter the contracts' plain language as to the minimum term.

B.    Kodak's Attacks on the Jury Verdict and Denial of Judgment as a Matter of Law

To prove a breach of contract claim under New York law, a party must show:  "[1] formation of a contract, [2] performance by one party, [3] failure to perform by another, and [4] resulting damage."  N.Y. State Workers' Comp. Bd. v. SGRisk, LLC, 983 N.Y.S.2d 642, 648 (App. Div. 2014).  Kodak contends that ITyX did not sufficiently show breach under either the Master or PS Agreements and that the jury verdict is inconsistent.

1.    Kodak Misunderstands the Jury's Findings of Breach of Contract as to the Master Agreement

Kodak argues that the district court erred in denying its motion for judgment as a matter of law because Kodak reads the jury finding that Kodak did not breach "by terminating [the Master

- 17 -

and/or PS Agreements] on December 18, 2015" to mean that Kodak validly terminated the Agreements in December 2015.[5]

First, this argument is forfeited, as Kodak "did not raise a claim of inconsistency before the [district] court discharged the jury." Correia v. Fitzgerald, 354 F.3d 47, 56–57 (1st Cir. 2003).

Second, Kodak's argument, even if preserved, reads too much into this finding. This jury finding non-breach in this respect does not contradict the jury finding that Kodak breached by a different action and/or on some other date. The jury found that Kodak had reentered the IDR business within two years of purporting to abandon the business and that Kodak had breached the PS Agreements. Such reentry is a different breach of the Master Agreement. The jury then awarded damages to ITyX (and no damages to Kodak). "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962). Here, that view is that Kodak, through reentry within two years, breached the Master Agreement, Kodak breached the PS Agreements, and ITyX did not breach the terms of these Agreements, including the implied

---

[5] We do not address Kodak's arguments that are premised on the notion that the jury found it had breached the Master Agreement by terminating the contract. The jury found that Kodak did not so breach the Master Agreement.

- 18 -

covenant of good faith and fair dealing. The jury's findings are internally consistent, and sufficient evidence supports its finding that Kodak breached the Master Agreement and PS Agreements, but did not do so by purporting to terminate the Agreements on December 18, 2015.

Next, Kodak argues both that the damages awarded were "speculative and lacked evidentiary support." Both arguments lack merit.

As to its "speculative" damages argument, Kodak asserts that ITyX improperly calculated damages by factoring in the sales figures of products they argue were irrelevant, and the jury impermissibly relied on these product calculations. ITyX presented evidence of its calculation of its damages under the Master Agreement as forty percent of Kodak's AIM Platform sales. The evidence was that the AIM Platform sales were a reasonable proxy for the sales the Kodak Product would have accrued but for Kodak's breach, of which forty percent belonged to ITyX under the Master Agreement. Kodak's argument takes two forms: (1) that the jury could rely only on figures related to the Kodak Product's sales; and (2) that the AIM Platform figures include the sales of products the district court had held not to compete with the Kodak Product.

Kodak's first argument, that the jury could not rely on the sales figures of the AIM platform, misreads the applicable

law.  Kodak relies on the rule that "[d]amages awarded for a breach of contract must be 'specific to those goods for which the parties had contracted.'"  Mongiello's Italian Cheese Specialties, Inc. v. Euro Foods Inc., No. 14-cv-2902 (DF), 2018 WL 4278284, at *46 (S.D.N.Y. Mar. 30, 2018) (quoting David v. Glemby Co., 717 F. Supp. 162, 170 (S.D.N.Y. 1989)).  Because the jury awarded damages for the Kodak Product revenues ITyX lost as a result of the breach, and not for some other ITyX product, the award complied with the rule.

Next, Kodak argues that the AIM Platform sales figures comprised revenues from products that would not compete with the Kodak Product and that the AIM Platform was not analogous to the Kodak Product because it was sold to "different customers, in a different market, in a different geographic area, and under a different price structure."  Nothing compelled the jury to accept this view or to reach a different damages sum.

Under New York law, "the non-breaching party need only provide a 'stable foundation for a reasonable estimate [of damages]' before an award of general damages can be made."  Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 110–11 (2d Cir. 2007) (alteration in original) (quoting Freund v. Wash. Square Press, Inc., 314 N.E.2d 419, 421 (N.Y. 1974)).  Here, ITyX did just that by providing the sales figures of the product that Kodak marketed in place of ITyX's.  That Kodak can

point to factors which tend to show that the estimate was too high (just as ITyX can point to factors suggesting it was too low) does not violate New York's "stable foundation" rule.  Under New York law, only the <u>existence</u>, not the <u>amount</u>, of general damages must be "reasonably certain" to prove a breach of contract claim.  <u>Id.</u> at 110 (quoting <u>Wakeman</u> v. <u>Wheeler & Wilson Mfg. Co.</u>, 4 N.E. 264, 266 (N.Y. 1886)).

2.    <u>Kodak's Attack Fails as to the Jury's Finding of Breach of Contract as to the PS Agreements</u>

Kodak first argues that, following Kodak's December 2015 purported termination, ITyX failed to perform its contractual obligations under the PS Agreements and so could not prove it had met the performance element.  Specifically, Kodak contends that ITyX stopped identifying which employees provided services related to the Kodak Product, issuing relevant invoices, and refunding from each invoice the amount allocated to employees on Kodak's payroll.  These actions, Kodak argues, were conditions precedent to Kodak making quarterly payments under the PS Agreements.  In response, ITyX argues the PS Agreement obliged it to maintain capacity and, by doing so, ITyX performed.  This was a matter for the jury to resolve.

The jury heard testimony and saw evidence supporting both Kodak's and ITyX's arguments as to such performance and the alleged breach of the PS Agreements.  The jury expressly found

that Kodak breached the PS Agreements by not making these payments and that ITyX had not breached the PS Agreements. The jury had an adequate evidentiary basis for its verdict and its verdict was rational.[6]

Kodak next argues that ITyX failed to prove damages incurred by any alleged breach of the PS Agreement. This too was an issue for the jury, and its conclusion is both supported and rational. ITyX provided witness testimony about the manner of calculating its costs of maintaining capacity under the PS Agreements, and explaining the PS Agreements, which provide a table of the quarterly payments Kodak was obligated to make. Kodak's argument fails.[7]

---

[6] While we have addressed Kodak's argument on the merits, Kodak seems to have waived this performance argument by not raising it in its Rule 50(a) motion. Kodak argued that, because "there[] [was] no list of the people who were on the ITyX Solutions payroll who [were] doing any work[,] . . . [ITyX] [could not] prove damages." This preserves Kodak's argument as to the damages element, but not as to the performance element, i.e., ITyX's purported non-performance of the PS Agreements.

[7] Employing the same arguments, Kodak appeals the district court's denial of Kodak's motion to amend the district court's declaratory judgments to hold that the Master Agreement was terminated on December 18, 2015, and so Kodak did not breach any contract. The declaratory judgments are consistent with, and nearly identical to, the jury verdict. The district court clearly did not abuse its discretion.

3.  Prejudgment Interest on the Damages Under the Master Agreement Should Be Computed from January 1, 2017

The district court calculated a prejudgment interest award of $1,745,654.20 at the New York prescribed rate of nine percent.  See N.Y. C.P.L.R. § 5004; see also Analysis Grp., Inc. v. Cent. Fla. Invs., Inc., 629 F.3d 18, 24 (1st Cir. 2010) (stating that substantive state law governs the prejudgment interest award in diversity actions).  The district court calculated the prejudgment interest on the $872,529 in damages awarded for breach of the Master Agreement from the date the complaint was filed.[8] Kodak appeals only the date used for computation of damages under the Master Agreement.

Under New York Law,

> [t]he date from which interest is to be computed shall be specified in the verdict, report or decision.  If a jury is discharged without specifying the date, the court upon motion shall fix the date, except that where the date is certain and not in dispute, the date may be fixed by the clerk of the court upon affidavit.  The amount of interest shall be computed by the clerk of the court, to the date the verdict was rendered or the report or decision was made, and included in the total sum awarded.

N.Y. C.P.L.R. § 5001(c).  Because the jury did not fix the date, the district court was thus authorized on motion to fix the date. Id.  The parties offered two potential dates:  Kodak argued for

---

[8]     The district court calculated the prejudgment interest on the separate breach of the PS Agreement from the date each missed payment was due.

January 1, 2017, the beginning of the first year of AIM Platform sales. ITyX argued for the date of the filing of the complaint, February 15, 2016. The district court chose the earlier date of filing, but gave no statement of reasons.

Under New York law, the date chosen depends on there being both a breach and damages. See N.Y. C.P.L.R. § 5001(b) ("Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred."); N.Y. State Workers' Comp. Bd., 983 N.Y.S.2d at 648 (discussing the elements for contract breach cause of action); see also Gelco Builders & Burjay Contr. Corp. v. Simpson Factors Corp., 301 N.Y.S.2d 728, 730-31 (Sup. Ct. 1969) (requiring proof of damages on the date from which prejudgment interest runs). The jury verdict here, for breach of the Master Agreement, awarded damages equivalent to the licensing fees owed for the breach. Kodak argues that, because such damages were for license fees, the proper date for the running of interest is January 1, 2017, as Kodak did not make any new sales for which it would have owed fees before this date. We think Kodak's position is the correct one under New York law, for the reasons stated above.[9]

---

[9] Kodak did not argue that the damages occurred at various times and so should be computed "from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b).

We vacate the award of prejudgment interest on the $872,529 in damages under the Master Agreement, and remand with instructions to calculate prejudgment interest from January 1, 2017.

C.   The District Court Did Not Abuse Its Discretion in Denying Kodak's Motion for a New Trial

Kodak presents three arguments that the district court abused its discretion in denying Kodak's motion for a new trial: (1) the verdict was against the great weight of the evidence; (2) the verdict form confused the jury; and (3) misconduct by ITyX's trial counsel tainted the proceedings.  We address each argument in turn.

The verdict was most certainly not against the great weight of the evidence, nor was the verdict an injustice to Kodak. Although the district court has a much "broader" power to grant new trial than judgment as a matter of law, it "'cannot displace a jury's verdict merely because [it] disagrees with it' or because 'a contrary verdict may have been equally . . . supportable.'" Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009) (second alteration in original) (quoting Ahern v. Scholz, 85 F.3d 774, 780 (1st Cir. 1996)).  A district court may "independently weigh the evidence," but can only order a new trial when the verdict is against the weight of the evidence or when a new trial is necessary to prevent injustice.  Id.  Kodak here offers substantially the

same arguments we have already rejected and so we cannot say there was any abuse of discretion.

Next, Kodak argues that the verdict form confused the jury, rehashing its argument that the jury must have been confused because it found that Kodak did not breach the Master Agreement but nonetheless assessed damages for that breach. At oral argument, Kodak offered a new variation of its jury confusion argument: that the district court and parties agreed that, if the jury found that Kodak did not breach "by terminating [the Master and/or PS Agreements] on December 18, 2015," then Kodak validly terminated the Master Agreement on that date, so the Exit Provision would no longer have any force.

We earlier rejected these inconsistency arguments as forfeited under Correia, 354 F.3d at 56–57, and meritless under Atlantic & Gulf Stevedores, Inc., 369 U.S. at 364, and do so again here in response to the argument. Moreover, Kodak did not sufficiently develop the latter jury confusion argument on appeal, and so it is doubly waived.[10] United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). To the extent this is a belated attack on the verdict form or the jury instructions, the arguments are

_____

[10] In its appellate briefing, Kodak merely states its view that the parties and district court had agreed in a colloquy outside the presence of the jury that "an answer in the negative to Question 2 meant that the Master Agreement was validly terminated and the Exit Provision ceased to have effect."

waived. Kodak objected to neither. See Kavanaugh v. Greenlee Tool Co., 944 F.2d 7, 11 (1st Cir. 1991); Moore v. Murphy, 47 F.3d 8, 11 (1st Cir. 1995).

Finally, Kodak argues that purported misconduct by ITyX's counsel "tainted the proceedings" and warrants a new trial. The purported misconduct, as Kodak would have it, is that the plaintiff's counsel made efforts to portray ITyX as David against Kodak as Goliath. Counsel for ITyX referenced the relative sizes of the parties on two occasions: (1) it elicited testimony on Kodak's revenues; and (2) ITyX, in its closing, characterized Kodak as a "large company taking advantage of a smaller company." Even if these comments were inappropriate, and we do not say they were, the court's instructions clearly offset any such suggestions, stating:

> You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to [a] . . . fair trial . . . regardless of its absolute size or its size relative to any other party in the case.

And nothing in the jury's verdict leads even to a suspicion that the jury ignored this instruction. See Río Mar Assocs., LP, SE v. UHS of P.R., Inc., 522 F.3d 159, 163 (1st Cir. 2008) ("[J]urors are presumed to follow the trial court's instructions.").

There was nothing unfair or inappropriate as to the jury's verdict or the district court's rulings.

III.

We <u>affirm</u> the rulings of the district court in all respects except its award of prejudgment interest on damages under the Master Agreement. As to that prejudgment interest award, we <u>vacate and remand</u> with instructions to recalculate that interest from the date of January 1, 2017. Costs are awarded to ITyX Solutions AG.