# United States Court of Appeals
## For the First Circuit

No. 20-1027

ROBERT J. THOMPSON,

Plaintiff, Appellant,

v.

GOLD MEDAL BAKERY, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Barron and Selya, Circuit Judges,
and Katzmann, Judge.[*]

John R. Mitchell for appellant.
Christopher B. Kaczmarek, with whom Littler Mendelson, P.C.
was on brief, for appellee.

March 2, 2021

---

[*] Of the United States Court of International Trade, sitting
by designation.

**BARRON**, **Circuit Judge**. This appeal concerns Robert Thompson's suit against his former employer, Gold Medal Bakery, Inc. ("Gold Medal"), after it fired him in August of 2016. Thompson alleged in his complaint, among other things, that Gold Medal terminated his employment in violation of state and federal disability discrimination laws and the anti-retaliation provision of the Family and Medical Leave Act ("FMLA"). The District Court granted summary judgment to Gold Medal on these claims.

The District Court first granted summary judgment to Gold Medal on Thompson's state and federal disability discrimination claims based on representations that he had made, following his firing, to the Social Security Administration ("SSA") in applying for Social Security and Disability Insurance ("SSDI") benefits. The District Court determined that those representations, which concerned when his disability had rendered him totally unable to work, estopped him from making the case that a reasonable juror could find that he was able to return to work at the time that he was fired, thereby precluding him from proving a necessary element of his disability discrimination claims. With respect to Thompson's FMLA retaliation claim, the District Court granted summary judgment to Gold Medal, because it determined that Thompson had failed to establish that there was a genuine issue of material fact as to whether Gold Medal's asserted reason for terminating his employment was either itself evidence of its intent

to retaliate against him for taking FMLA-protected leave or a pretext for such a retaliatory intent.

Thompson now challenges each of these rulings in this appeal. We affirm.

## I.

Because Thompson's appeal challenges a pair of summary judgment rulings, we recount the facts, drawn from the record, in the light most favorable to him. McKenney v. Mangino, 873 F.3d 75, 78 (1st Cir. 2017). We begin with the events that led up to Gold Medal firing him. We then recount Thompson's efforts to apply for SSDI benefits. Finally, we describe the travel of the case.

## A.

Thompson began working for Gold Medal in 1979 as a production worker. He held various positions at the company over the course of his employment there, before becoming a production technician in 2010.

In January of 2016, Thompson suffered a knee injury. He consulted with his physician about the injury, who referred him to Dr. Michael Langworthy, an orthopedic surgeon. Dr. Langworthy recommended a complete knee replacement surgery, and the operation was scheduled for May 9, 2016.

On April 20, 2016, Thompson requested medical leave from Gold Medal, to begin on the date of his surgery. The FMLA entitled Thompson to twelve work weeks of unpaid leave in connection with

- 3 -

this medical condition.  See 29 U.S.C. § 2612(a)(1)(D), (c).  Thus, under the FMLA, he was entitled to take unpaid leave from the date of his surgery until August 1 of that year.  Moreover, Gold Medal's short-term disability policy entitled Thompson to be paid eighty-five percent of his salary during that FMLA-protected leave.

Thompson attached to his leave request that he filed with Gold Medal a form that had been signed by Dr. Langworthy's office.  The form indicated that Thompson would be "unable to work" as of May 9 due to his medical condition and that his "[e]xpected . . . return to work date" was thirteen weeks later, on August 9, 2016.

Around the same time that he requested FMLA leave from Gold Medal, Thompson met with Christina Marquez, a human resources employee at the company.  In that meeting, she informed him that he was entitled to more than thirty weeks of leave from Gold Medal on account of the fact that he had worked at the company for many years.

On May 9, Thompson had his surgery as planned.  Then, several weeks later, on May 31, Gold Medal sent him a letter, signed by Marquez, that informed him that his leave request had been approved.  The letter stated that Gold Medal would "hold open" Thompson's job there "or an equivalent position" for "no longer than 12 weeks in a 12 month period measured forward from the date the leave began."

The letter made no mention of any other leave that Thompson was entitled to receive. The letter also stated that he was "required prior to [his] return to work to submit a Fitness for Duty Certificate from [his] health care provider indicating that [he was] cleared to return to work full duty."

Gold Medal sent with the letter a printout that set forth more detail about the company's leave policy. It stated that "[a]bsent unusual circumstances" FMLA-protected leave can be "no more than twelve weeks."[1]

As of that time, Thompson's first scheduled appointment with Dr. Langworthy to evaluate whether Thompson was ready to return to work was set for August 12, which was after his approved leave was set to expire. On June 24, 2016, Thompson called Marquez and requested that Gold Medal extend this previously granted paid leave through August 12.

---

[1] Thompson argues that the printout that described Gold Medal's leave policy (which Marquez also had provided to him when they first met regarding his leave) was incomplete. He contends in this regard that, although the Employee Handbook for Gold Medal provides that "[a]bsent unusual circumstances," FMLA leave cannot exceed "twelve weeks (or as required under applicable law)," the printout omitted the parenthetical information. We do not see why this discrepancy bears on the issues we must decide, but, in any event, the cited portion of the Employee Handbook was removed from the appellate record because it was not part of the record in the lower court. See Bellone v. Southwick-Tolland Reg'l Sch. Dist., 748 F.3d 418, 420 (1st Cir. 2014) (declining to consider evidence not presented in the lower court).

Marquez informed Thompson by phone on August 1 that his request to extend his leave to August 12 had been approved. But, around August 9, Dr. Langworthy's office rescheduled Thompson's slated August 12th appointment and moved it back to September.

At that point, Thompson called Dr. Langworthy's office to seek an earlier appointment, and the office moved his September appointment up to August 17 after Thompson agreed to see a different doctor. Thompson then called Marquez again on August 9 to inform her that he would not be able to obtain the fitness-for-duty certificate that Gold Medal required him to have for him to be able to return to work until August 17.

Marquez initially informed Thompson on that call that it "shouldn't be a problem" for him to remain on leave through August 17. She then emailed the Vice President of Human Resources at Gold Medal to inform him that she had extended Thompson's leave until August 17. But, later that same day, Marquez emailed John Ferreira, Thompson's supervisor, to inform him that Thompson needed an extension of his leave to August 17.

Ferreira emailed back, asking "[w]hy are we extending his FMLA" leave. Marquez replied by email: "His FMLA [leave] ended on 8/1/2016, but since we knew of a follow-up appointment date, we extended his FMLA time until his next appointment date (8/17)."

Ferreira stated in his deposition that he recalls that he then told Marquez that unless Gold Medal "had to extend" Thompson's leave, it should not be extended and that Thompson had to return to work with a fitness-for-duty certificate.[2] Ferreira also testified that he did not recall Marquez telling him that Thompson originally had scheduled an appointment with his doctor to evaluate his fitness to return to work for August 12 but that his doctor's office had then rescheduled that appointment for August 17.

Marquez called Thompson on August 11 to tell him that Gold Medal would not extend his leave to August 17. Gold Medal also sent Thompson a letter, postmarked August 12, that stated that he had "exhausted [his] available leave of absence time," that his "latest physician's appointment" would "keep him out until at least August 17, 2016," and that, accordingly, he was being terminated, effective August 12, 2016.

On August 17, Thompson had his follow-up appointment with Dr. Langworthy's office. After the appointment, the office sent forms to Gold Medal that certified that Thompson had no functional limitations. In a section described as "information

_____

[2] Ferreira also testified that he was unaware that Gold Medal had extended Thompson's leave through August 12, and the District Court found that it was "undisputed that Marquez lacked the authority to extend [Thompson's] leave beyond twelve weeks." However, that question of whether Thompson's initial extension was approved does not affect our analysis.

- 7 -

about the patient's inability to work," (capitalization altered), the doctor noted that Thompson had "return[ed] to [his] prior level of functioning." The form also noted that Thompson had "achieved maximum medical improvement." The only functional limitation that was listed on the form was that Thompson should avoid squatting.

**B.**

Following this series of events, Thompson, newly unemployed, applied on August 23, 2016, to the SSA for benefits through the SSDI program. In his application for those benefits, Thompson stated, under penalty of perjury, that he "became unable to work because of [his] disabling condition on May 8, 2016," and that, as of the date of filing, August 23, 2016, he was "still disabled." (capitalization altered).

On one form Thompson submitted to the SSA, in response to the question, "What were you able to do before your illnesses, injuries, or conditions that you can't do now?" he stated "everything." He noted that he was experiencing "[e]xtreme pain while sleeping," that he was unable to put on his pants or stand in the shower, and that he was "very unstable." He also stated that he was "[n]ot comfortable going to family events" and that his condition affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, complete tasks, concentrate, and use his hands, and that it impeded his memory.

As part of the SSDI application process, Thompson also underwent a psychological evaluation. His evaluator described him as having a major depressive disorder and a generalized anxiety disorder, conditions which stemmed in part from "anxiety about his health and depression regarding his present circumstances and his future."

The SSA notified Thompson on October 17, 2016, that it had determined that he was disabled as of May 8, 2016. The SSA found that he suffered from three medically determinable impairments: osteoarthrosis and allied disorders, spine disorders, and fibromyalgia. The SSA further found that Thompson had significant exertional limitations, including that he should only lift and/or carry up to ten pounds frequently and up to twenty pounds occasionally.

The SSA set Thompson's benefits at $2,407 per month. Noting that, to receive disability benefits, an applicant "must be disabled for five full calendar months in a row," see 20 C.F.R. § 404.315(a)(4), the SSA concluded that Thompson was entitled to begin collecting benefits beginning in November 2016, five full months after the May 8 date it had identified as the time of the onset of his disability. Thompson thereafter began receiving SSDI benefits in accord with the SSA's ruling.

## c.

On February 9, 2018, Thompson filed suit in Superior Court in Massachusetts against Gold Medal. His complaint alleged, among other things, claims for disability discrimination in violation of Massachusetts law and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., as well as for violation of the FMLA, 29 U.S.C. §§ 2601 et seq.[3]

With respect to his disability discrimination claims under the ADA, Thompson alleged both that he had been terminated in violation of that statute based on his disability and that he had been wrongfully denied a request for a reasonable accommodation of that disability. See 42 U.S.C. § 12112(a), (b)(5)(A). Thompson made parallel claims under the Massachusetts analogue to the ADA. See Mass. Gen. Laws ch. 151B, § 4(16).

Gold Medal removed the case to the U.S. District Court for the District of Massachusetts based on federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction, id. § 1367. Once in federal court, Gold Medal moved for summary judgment on Thompson's disability discrimination claims, both state and federal. The District Court granted that motion. Then,

---

[3] In the initial complaint, Thompson also brought claims for age discrimination under state and federal law and a count seeking injunctive relief. The District Court dismissed those claims at the same time it granted Gold Medal's motion for summary judgment on Thompson's disability discrimination claims.

two months after that ruling, Gold Medal moved for summary judgment on Thompson's FMLA retaliation claim,[4] which the District Court also granted.

Thompson now appeals these rulings.[5] We have jurisdiction under 28 U.S.C. § 1291.

## II.

We start with Thompson's challenge on appeal to the District Court's grant of summary judgment to Gold Medal on his federal and state disability discrimination claims. Our review is de novo. Brader v. Biogen Inc., 983 F.3d 39, 53 (1st Cir. 2020).

Summary judgment is proper "if the record, construed in the light most flattering to the nonmovant, presents 'no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.'" Theidon v. Harvard Univ., 948 F.3d 477, 494 (1st Cir. 2020) (quoting Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013)). To survive a defendant's motion for summary judgment, the plaintiff must "adduce specific facts

---

[4] The District Court had originally granted Gold Medal's motion for judgment on the pleadings on Thompson's substantive FMLA claim but denied it as to his retaliation claim, holding that the latter claim presented a "quintessential 'question of fact' requiring the development of a record" as to whether there was a causal connection between Thompson's taking of FMLA leave and his firing.

[5] Although Thompson referenced his substantive FMLA claim in his reply brief, we do not consider arguments not raised in an appellant's opening brief. See Russomano v. Novo Nordisk Inc., 960 F.3d 48, 54 n.6 (1st Cir. 2020).

showing that a trier of fact could reasonably find in his favor." Brader, 983 F.3d at 53.  In so doing, he "cannot rely on 'conclusory allegations, improbable inferences, acrimonious invective, or rank speculation.'"  Theidon, 948 F.3d at 494 (quoting Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010)).

**A.**

The District Court granted summary judgment to Gold Medal on each of Thompson's ADA claims, which, as we have noted, are for wrongful termination based on his disability and wrongful denial of his request for a reasonable accommodation of his disability.  See 42 U.S.C. § 12112(a), (b)(5)(A).  For each of these ADA claims, Thompson must establish that he was a "qualified individual" at the time of his firing.  See id.  The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position" in question.  Id. § 12111(8).  The District Court granted summary judgment to Gold Medal based on its determination that, as a matter of law, Thompson could not make that showing.  We agree.

The District Court relied for this conclusion on Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999). There, the Supreme Court of the United States addressed whether a plaintiff's claim for the wrongful denial of a request for reasonable accommodation under the ADA could proceed even though

that plaintiff had previously successfully applied to the SSA for SSDI benefits. Id. at 800. After all, the Court explained, SSDI benefits are available only to "a person with a disability so severe that she is 'unable to do [her] previous work' and 'cannot . . . engage in any other kind of substantial gainful work which exists in the national economy.'" Id. at 797 (alterations in original) (quoting 42 U.S.C. § 423(d)(2)(A)). Thus, the Court observed, the representations that such a plaintiff must make in claiming to be a "qualified individual" under the ADA are "seemingly divergent" from the representations that she has made to the SSA in claiming to be disabled and thus entitled to SSDI benefits. Id.

The Court explained that this divergence was potentially problematic for such an ADA plaintiff because, under principles of judicial estoppel, an ADA plaintiff cannot be permitted to simply contradict a "previous sworn statement asserting 'total disability' or the like" to the SSA. Id. at 806-07. Nonetheless, the Court did not hold that the doctrine of judicial estoppel necessarily bars an ADA plaintiff who has applied for and received SSDI benefits from demonstrating that she is a "qualified individual" in pressing her ADA claim. Id. at 797. Instead, the Court explained, such a plaintiff could overcome judicial estoppel, and thus "survive a defendant's motion for summary judgment" on her ADA claim on that basis, if she could "explain

- 13 -

why [her] SSDI contention is consistent with" her "qualified individual" contention. Id. at 798, 801. Cleveland then elaborated that the "explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in," the statement to the SSA, "the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" Id. at 807 (quoting 42 U.S.C. § 12111(8)).

Thompson endeavored to provide such an explanation to the District Court. He contended that, although he would have been able to return to work on August 12, 2016, despite his knee condition and the other ailments from which he was suffering at that time, his mental health and physical condition deteriorated following his termination and that the SSA had found him to be totally unable to work -- and thus disabled -- in light of that decline in his health.

The District Court concluded, however, that Thompson's representation to the SSA that he was disabled as of May 8, 2016, precluded him from establishing that he was a "qualified individual" as of his firing three months later on August 12. Accordingly, the District Court granted summary judgment to Gold Medal on that basis on Thompson's ADA claim for the wrongful denial of his request for reasonable accommodation of his disability. The District Court reached that same conclusion, on the same basis,

on his ADA claim for wrongful discharge based on his disability, which, we note, is also a type of ADA claim to which we have applied Cleveland with respect to the "qualified individual" element. See Pena v. Honeywell Int'l, Inc., 923 F.3d 18, 27-28 (1st Cir. 2019).

## B.

In Thompson's application to the SSA for SSDI benefits, he stated, under penalty of perjury, that he "became unable to work because of [his] disabling condition on May 8, 2016," and that, as of the date of filing the application, August 23, 2016, he was "still disabled." (capitalization altered) (emphasis added). He made those statements in the context of an application for a federal program that requires applicants to "be disabled for five full calendar months in a row" before receiving benefits, 20 C.F.R. § 404.315(a)(4), and which awarded his first disbursement for November 2016.

To the extent that Thompson now argues that he was disabled beginning May 8 (on account of his surgery), that he was able to return to work on August 12 (after his recovery), but that his condition deteriorated between his August 12 termination and his August 23 benefits application (on account of his firing), he made no such representation to the SSA. And, under Cleveland, we must "assum[e] the truth of, or" Thompson's "good-faith belief in" the statements that he made in his benefits application, 526 U.S.

- 15 -

at 807, namely, that he identified May 8, 2016, as the start date for the condition for which he claimed the total disability that "still" rendered him unable to work as of August 23, 2016. Thus, we agree with the District Court's reasoning in concluding that Thompson has failed to offer the kind of explanation that Cleveland requires for his ADA claims to go forward, given his representations to the SSA in applying for SSDI benefits.

Thompson does also argue that, unlike the plaintiff in Pena v. Honeywell International, who repeatedly reaffirmed her inability to work and was held to be barred from pursuing her ADA claim, 923 F.3d at 30, he testified in connection with this litigation that he could have returned to work on August 12. But, under Cleveland, what matters is whether his representations to the SSA judicially estop him from establishing that he is a "qualified individual" under the ADA. 526 U.S. at 806-07. Thus, as Cleveland makes clear, Thompson's statements subsequent to his SSDI application in connection with this litigation about when he was disabled are of no moment, insofar as they contradict his sworn statements on that score to the SSA. See id. at 807.[6]

---

[6] Thompson also mentions that his SSDI application was based on a range of physical conditions and not solely on the knee arthritis that led to his surgery and leave. But, he develops no legal argument that he could have been a "qualified individual" within the meaning of the ADA at the time of his firing if his knee condition in and of itself posed no obstacle to him working even if he was unable to work nonetheless due to his other ailments

## C.

The District Court also granted summary judgment to Gold Medal on Thompson's state-law disability discrimination claims, which paralleled his federal ones. The District Court did so based on the same reasoning that we have described above. Because Thompson makes no contention that Cleveland's logic has no application to his state-law disability discrimination claims, we reject his challenge to this aspect of the District Court's summary judgment ruling as well.

## III.

Thompson's remaining challenge on appeal is to the District Court's grant of summary judgment to Gold Medal on his FMLA retaliation claim. Here, too, our review is de novo, see Brader, 983 F.3d at 53, and we draw all reasonable inferences from the facts of record in Thompson's favor, Theidon, 948 F.3d at 494.[7]

## A.

The FMLA precludes employers from "us[ing] the taking of FMLA leave as a negative factor in employment actions." Hodgens v.

_____

in combination with his knee condition, and, thus, we do not consider such a claim. See United States v. Gonzalez, 981 F.3d 11, 23 (1st Cir. 2020). We therefore do not see how the point aids his cause.

[7] There is no merit to Gold Medal's contention that, because Thompson cannot overcome Gold Medal's assertion of judicial estoppel on his disability discrimination claims, he lacks Article III standing to bring this FMLA claim. See ITyX Sols. AG v. Kodak Alaris, Inc., 952 F.3d 1, 9-10 (1st Cir. 2020); Carson v. Makin, 979 F.3d 21, 30 (1st Cir. 2020) (reviewing standing de novo).

Gen. Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998) (quoting 29 C.F.R. § 825.220(c)). To make out an FMLA retaliation claim, Thompson must show: that he "availed [himself] of a protected FMLA right," that he was "adversely affected by an employment decision," and that "there was a causal connection between [his] protected conduct and the adverse employment action." Germanowski v. Harris, 854 F.3d 68, 73 (1st Cir. 2017) (quoting Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 719 (1st Cir. 2014)).

In evaluating whether a plaintiff can survive summary judgment on an FMLA retaliation claim in a case lacking direct evidence of such retaliation, we apply a three-step burden-shifting framework. Ameen v. Amphenol Printed Cirs., Inc., 777 F.3d 63, 69 (1st Cir. 2015). The plaintiff has the initial burden of setting forth sufficient evidence to permit a reasonable juror to find that he has established a prima facie case of FMLA retaliation, and thus sufficient evidence to permit a reasonable juror to find a causal connection between the plaintiff's FMLA-protected activity and the adverse employment action. Id.

The burden then "shifts to the employer 'to articulate some legitimate, nondiscriminatory reason'" for the adverse employment action. Id. (quoting Hodgens, 144 F.3d at 160). If the evidence suffices to permit a reasonable juror to find that the employer has met that burden of production, then the employee

- 18 -

"retains the ultimate burden of showing that the employer's stated reason for terminating him was in fact a pretext for retaliating against him for having taken protected FMLA leave." Id. (quoting Hodgens, 144 F.3d at 161). As a result, at this third and final step, to defeat the motion for summary judgment the FMLA plaintiff must show that there is sufficient evidence in the record to permit a reasonable juror to make that finding. See id.

**B.**

The District Court assumed that Thompson could make a prima facie case of retaliation under the FMLA. Nevertheless, the District Court held that Gold Medal was entitled to summary judgment on Thompson's FMLA retaliation claim.

Gold Medal asserts that it fired Thompson only because he failed to comply with the company's policy that employees on leave on account of a serious medical condition must provide a fitness-for-duty certificate upon completing that leave in order to be able to return to work. Gold Medal further contends that this reason for firing him was neither itself retaliatory nor a pretext for retaliation.

Thompson does not dispute on appeal that he failed to return to work with such a certificate as of August 12, 2016, when Gold Medal had informed him his leave had ended. He does, however, contend that Gold Medal's stated reason for firing him, given the evidence in the record of his strong performance as an employee,

amounts to nothing more than a decision to fire him for taking his FMLA leave.

Thompson does not explain, however, what basis there is for concluding that the FMLA bars an employer from requiring an employee to return to work with a fitness-for-duty certificate once their FMLA-protected leave expires as a condition of their continued employment. Nor do we see any basis in the FMLA for so concluding. See 29 C.F.R. § 825.313(d) (providing that an employee may be terminated for failing to comply with a uniformly applied fitness-for-duty certification requirement at the conclusion of FMLA leave); see also Bellone v. Southwick-Tolland Reg'l Sch. Dist., 748 F.3d 418, 425 (1st Cir. 2014) (upholding teacher's firing after he failed to return to work following FMLA leave); Henry v. United Bank, 686 F.3d 50, 58 (1st Cir. 2012) (similar).

Thompson next contends that "Gold Medal's ostensible reliance on its FMLA twelve-week policy" as the basis for his termination cannot suffice to preclude his FMLA retaliation claim from going forward, because this asserted reason for the decision to fire him was a "sham." But, here, too, we are not persuaded.

In support of this assertion of pretext, Thompson points to the fact that he was fired soon after he exercised his FMLA rights and that, as he puts it, "the record is replete with Gold Medal's inconsistent, contradictory, and implausible actions in

terminating him."[8]  Thompson is right that his firing was close in time to the expiration of his leave.  But, that timing is consistent with Gold Medal's explanation that Thompson was fired because he did not return to work with the certificate of his fitness for duty as of the date, August 12, that he had been informed that his leave was over.  Thus, the temporal proximity of his firing to the expiration of his leave affords no basis in and of itself for a reasonable juror to infer that the company's asserted reason for firing him -- that he failed to provide a fitness-for-duty certificate at the time of the expiration of his leave on August 12 -- was pretextual.  See Bonilla-Ramirez v. MVM, Inc., 904 F.3d 88, 96 (1st Cir. 2018); Micheo-Acevedo v. Stericycle of P.R., Inc., 897 F.3d 360, 365-66 (1st Cir. 2018).

Thompson is also right that an employer's arbitrary enforcement of an internal policy that it invokes in support of a termination decision can support a finding of pretext.  See Hodgens, 144 F.3d at 168.  Here, however, Thompson points to no

---

[8] Thompson makes no argument to us that, given that the appointment was canceled due to no fault of his own, and because he needed only a few more days to obtain a fitness-for-duty certificate, it was implausible that Gold Medal fired him for failing to provide a timely certificate. Moreover, even if he had made such a contention, that would not provide a non-speculative basis for rejecting Gold Medal's proffered reason, as he has pointed to no evidence in the record to suggest that Ferreira knew at the time of terminating Thompson either that his appointment's rescheduling was beyond his control or that Marquez had already extended Thompson's leave through August 12.

evidence in the record of a similarly situated employee ever having been treated differently by Gold Medal for violating the policy that is at issue. See Bellone, 748 F.3d at 425 (rejecting claim that fitness-for-duty-certificate requirement was not uniformly applied because plaintiff offered no examples of its inconsistent application). And while Thompson contends that neither Ferreira (who made the ultimate decision to fire him) nor Marquez (who advised Ferreira regarding the legal implications of discharging Thompson) fully understood the company's policy with respect to taking medical leave, we do not see how such evidence provides a basis for reversing the District Court's rejection of his attempt to show that there is a genuine issue of material fact as to whether Gold Medal's asserted reason for terminating him was a pretext for retaliating against him for taking FMLA-protected leave.

Thompson does assert in this regard that the record supportably shows that Marquez had initially told him that he was entitled to take thirty weeks of leave. He further points out that Ferreira testified in his deposition that he had "no idea" what Gold Medal's FMLA policy meant when it said that "[a]bsent unusual circumstances, an employee on an FMLA leave is expected to return [to work] at the end of the granted period of time." (emphasis added). But, the fact that Marquez may have advised Thompson early on that he was entitled to more leave than he was

- 22 -

ultimately approved to receive or that Ferreira may not have properly understood all the details of the company's leave policy does not alter the fact that the record fails to provide a non-speculative basis for deeming a sham Gold Medal's asserted reason for terminating Thompson's employment -- that he did not return to work at the company with a fitness-for-duty certificate as of the date he was told his leave expired, August 12, 2016. See Ramírez Rodríguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67, 83 (1st Cir. 2005) (upholding grant of summary judgment to defendant-employer in age discrimination suit where reasons for termination were "articulated consistently throughout the course of th[e] litigation" and there was "no basis for a finding" that the employer "did not believe, in good faith, that it had a legitimate reason to terminate" the employee).

Finally, Thompson argues for the first time in his reply brief that Gold Medal violated the FMLA when it refused to extend his leave beyond August 12, because a more generous leave policy was in effect at Gold Medal for employees of his tenure. But, even setting aside the untimely nature of the argument, see Russomano v. Novo Nordisk Inc., 960 F.3d 48, 54 n.6 (1st Cir. 2020), there is another problem with it. It is a contention that Gold Medal's termination of Thompson's employment deprived him of taking leave beyond August 12 to which he claims to have been entitled under the FMLA. It is not a contention that Gold Medal's

stated reason for terminating his employment as of August 12 is a pretext for having fired him for taking FMLA leave in the first place.  Thus, that newly raised contention supplies no basis for overturning the District Court's grant of summary judgment on the only FMLA claim that is before us in this appeal, which is a claim for FMLA retaliation.

## IV.

For the foregoing reasons, we **affirm**.