# United States Court of Appeals
## For the First Circuit

No. 13-2267

OMAYRA MULERO-CARRILLO; AGUSTÍN R. BENÍTEZ-DÍAZ;
LARA VÁZQUEZ-VÁZQUEZ; OMAR GUERRERO-DÍAZ; DENISE GONZÁLEZ-
SANTANA; YOHANNA SANTANA-IRIZARRY; SAMIR CRESPO-NIEVES;
OMAR A. CRESPO-NIEVES; ANDY MELÉNDEZ-ZAYAS; JOSÉ DANIEL
CRUZ-GONZÁLEZ; MELISSA GRAFALS-PÉREZ; LEONARDO CRUZ-FLORES;
ÁNGEL I. FLORES-LUGO; REBECA VERA-SOTO; VERÓNICA LÓPEZ-
TORRES; FERNANDO VALENTÍN-GONZÁLEZ; CARLOS J. SANTIAGO-
AROCHO; MARITERE BABILONIA; GERARD BELTRE-TAVÁREZ;
GERARDO J. LÓPEZ-CEPERO-MONTES,

Plaintiffs, Appellants,

v.

ALEJANDRO ROMÁN-HERNÁNDEZ, individually and as President
of the P.R. Medical Board of Licensure and Discipline;
VICTORIANO QUINTANA; AGUSTÍN VIDAL; POLICEMAN EDWIN MEJÍAS;
DR. JOSÉ IBÁÑEZ; JUAN GONZÁLEZ; RAFAEL FERNÁNDEZ; MIGUEL
TALAVERA; P.R. BOARD OF MEDICAL LICENSURE & DISCIPLINE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Carlos A. Del Valle-Cruz, with whom Armando Lamourt were on
brief, for appellants.
Susana I. Peñagarícano-Brown, Assistant Solicitor General,
with whom Margarita L. Mercado-Echegaray, Solicitor General, were
on brief, for appellees.

June 17, 2015

**TORRUELLA, Circuit Judge**. Plaintiffs-Appellants are twenty graduates from medical schools outside of the United States who are ineligible to receive a medical license in Puerto Rico because they failed the Puerto Rico Medical Licensing Examination (the "PRMLE"). They challenge the validity of the PRMLE's purportedly arbitrary passing score via this 42 U.S.C. § 1983 action, alleging that Defendants-Appellees -- the Puerto Rico Board of Medical Licensure and Discipline (the "Board") and eight of its officers (the "Officers," and together with the Board, "Defendants"), in their official and individual capacities -- violated the Plaintiffs' due process and equal protection rights. The district court granted Defendants' motion to dismiss. Finding no plausible basis for a claim for relief, we affirm.

## I. Background

In 2007, investigators uncovered a massive medical licensing scandal in Puerto Rico involving nearly one hundred unqualified doctors who were illegally admitted to practice. In exchange for thousands of dollars in bribes, some former members of the regulatory body that preceded the Board allegedly doctored exam scores to grant medical licenses to unqualified applicants. See United States v. Rodríguez-Torres, 560 F. Supp. 2d 108, 110 (D.P.R. 2008). In the wake of this scandal, Puerto Rico's legislature enacted Law 139 of 2008 ("Law 139"), which reformed the Board's authority by adding safeguards such as new oversight procedures and

reporting requirements.  P.R. Laws Ann. tit. 20, §§ 131 et seq.
Under Law 139, the Board has broad authority to regulate Puerto
Rico's medical profession, including the power to delineate the
requirements for medical licenses.  Id. § 132d(3).

Despite this latitude, Law 139 limited the Board's powers
to control the examinations by requiring it to "delegate the
preparation, administering[,] and correction" of the local medical
licensing exam (the PRMLE) to an external organization.
Id. § 133a.  In compliance with this mandate, the Board selected
the National Board of Medical Examiners (the "NBME") to prepare the
PRMLE.  See P.R. Regs. Salud Reg. No. 7811 art. 3.3.  While the
NBME prepares the exam, "[t]he Board shall establish the grade
required to pass the [PRMLE]."  Id.  The Board chose a passing
score of 700 points for the PRMLE by issuing a regulation.

As an alternative to the PRMLE, all applicants for Puerto
Rico medical licenses -- including Plaintiffs -- may instead take
the United States Medical Licensing Examination (the "USMLE").  The
USMLE is also prepared by the NBME.  Though both the USMLE and
PRMLE test similar subject matters, the parties agreed at oral
argument that they are substantively different exams.  In addition
to the differences in content, there are other important
distinctions.  First, while applicants can take the USMLE only in
English, the PRMLE is offered in both English and Spanish.  Id.
Second, while a passing score on the PRMLE allows applicants to

-4-

qualify for a medical license in Puerto Rico only, a passing score on the USMLE allows applicants to qualify for a medical license in both Puerto Rico and the rest of the United States. Third, while the Board set the PRMLE's passing score at 700 points, the NBME set the USMLE's national passing score at 500 points.

Plaintiffs voluntarily elected to take the PRMLE rather than the USMLE and failed it. They then opted for this § 1983 action requesting injunctive relief and damages, arguing that: (1) the Board's "arbitrary" imposition of a 700-point passing score deprived them of a liberty or property interest in practicing the medical profession in violation of their due process rights; (2) since the Board accepts both the USMLE and the PRMLE for medical license applications, the difference in the passing scores between the two tests constitutes an equal protection violation; and (3) the Board's and its Officers' actions violated the Puerto Rico Constitution and Puerto Rico laws and regulations.

The district court dismissed Plaintiffs' complaint. First, the district court found that Plaintiffs conceded that their constitutional claims are subject to only rational basis review and held that Plaintiffs failed to plead facts plausibly demonstrating that the Board's imposition of a 700-point passing score in the PRMLE was not rationally related to the legitimate government interest in ensuring that foreign-trained doctors are sufficiently qualified to practice medicine in Puerto Rico. The district court

also concluded that all of Plaintiffs' constitutional claims against members of the Board acting in their official capacities were also barred by sovereign immunity. Finally, the district court concluded that Plaintiffs' constitutional claims for damages against members of the Board acting in their individual capacities would also have been barred by qualified immunity. Although the district court found that it had discretion to retain supplemental jurisdiction over the remaining state law claims, it declined to exercise this jurisdiction because it had dismissed all federal claims over which it had original jurisdiction.

This appeal ensued.[1]

## II. Sovereign Immunity and Constitutional Claims

### A. Standard of Review

We review de novo a district court's dismissal of a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006). We also review de novo a district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Id. Plaintiffs will survive a Rule 12(b)(6) motion to dismiss only if their pleadings plausibly establish that they are entitled to relief. Vernet v. Serrano-Torres, 566 F.3d 254, 258 (1st Cir.

---

[1] Plaintiffs expressly waived any argument regarding the district court's dismissal of all supplemental claims in their brief.

-6-

2009).  In undertaking this inquiry, "we assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff[s'] stated theory of liability."  In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003).

Also, we "may affirm on any basis apparent in the record."  Lemelson v. U.S. Bank Nat'l Ass'n, 721 F.3d 18, 21 (1st Cir. 2013); see also Gabriel v. Preble, 396 F.3d 10, 12 (1st Cir. 2005).

## B.  Sovereign Immunity Defense

Plaintiffs challenge the Board and the Officers' compliance with federal due process and equal protection guarantees, arguing that "[a] State cannot exclude a person from the practice of . . . any . . . occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment."  Schware v. Bd. of Bar Examiners of the State of N.M., 353 U.S. 232, 238-39 (1957).  They argue that in establishing requirements for professional licenses, a state's action must be rationally related to the applicants fitness or capacity to practice in a regulated field.  That is, the requirements may not be arbitrarily chosen without connection to the applicant's capacity.  Id. at 239 ("A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the

-7-

applicant's fitness or capacity to practice law."). Consequently, Plaintiffs request that we enjoin the Board from penalizing Plaintiffs because they failed the PRMLE. See Dkt. #25 at 42, ¶ 147(4) (Pls.' First Am. Compl.). They ask us to order the Officers to retroactively apply a 500-point passing score to Plaintiffs' preexisting PRMLE scores. See id. at 42, ¶ 147(3).

In response, Defendants contend that we must affirm dismissal of all claims -- under federal and state law -- against the Board and its members in their official capacity based on Plaintiffs' failure to state a plausible claim, and on our lack of subject matter jurisdiction pursuant to the Eleventh Amendment. They allege that Plaintiffs' request for injunctive relief prospectively ordering the Board to change the passing score of the PRMLE to 500 points violates the Commonwealth's sovereign immunity. In support of this, Defendants point to Pennhurst State School & Hospital v. Halderman, which held that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." 465 U.S. 89, 100 (1984) (quoting Emps. v. Mo. Pub. Health & Welfare Dep't, 411 U.S. 279, 280 (1973)).

In this case, we can bypass sovereign immunity issues because Plaintiffs' amended complaint lacks any merit on its face. "Eleventh Amendment questions are often labeled jurisdictional," Parella v. Ret. Bd. of Rhode Island Employees' Ret. Sys., 173 F.3d

46, 55 (1st Cir. 1999), and generally, jurisdictional issues must be resolved before analyzing dismissals under Rule 12(b)(6), <u>Ne. Erectors Ass'n of BTEA</u> v. <u>Sec'y of Labor, OSHA</u>, 62 F.3d 37, 39 (1st Cir. 1995). But "it is well-established under First Circuit precedent that federal courts may resolve a case on the merits in favor of a state without first resolving any Eleventh Amendment issues the state raises." <u>Brait Builders Corp.</u> v. <u>Mass., Div. of Capital Asset Mgmt.</u>, 644 F.3d 5, 11 (1st Cir. 2011) (citing <u>Parella</u>, 173 F.3d at 53-57). <u>See also</u> <u>Redfern</u> v. <u>Napolitano</u>, 727 F.3d 77, 82 (1st Cir. 2013) (bypassing jurisdictional question entirely because claims became moot); <u>Dávila</u> v. <u>Corporación de P.R. para la Difusión Pública</u>, 498 F.3d 9, 14 (1st Cir. 2007). Therefore, we examine Plaintiffs' claims directly under a Rule 12(b)(6) analysis.

## C. Rule 12(b)(6) Plausibility Analysis

Plaintiffs will survive a Rule 12(b)(6) motion to dismiss their federal constitutional claims -- based on equal protection and substantive due process -- in this § 1983 action only if their pleadings plausibly establish that the Board or its members violated their federal constitutional rights. <u>See</u> 42 U.S.C. § 1983; <u>Rodríguez-Reyes</u> v. <u>Molina-Rodríguez</u>, 711 F.3d 49, 53-55 (1st Cir. 2013).

**1. "Similarly-Situated" and the Equal Protection Claim**

The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group. See U.S. Const. amend. XIV, § 1; Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004). Generally, for an equal protection claim to survive a motion to dismiss, a plaintiff must allege facts plausibly demonstrating that "'compared with others similarly situated, [the plaintiff was] selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (second alteration in original) (emphases omitted) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995)).

Here, however, because the Plaintiffs concede there is no implication of a fundamental right being affected, and, since they do not claim to belong to a suspect classification,[2] the Defendants are correct to argue that their medical licensing decisions require only rational basis review. See González-Droz v. González-Colón, 660 F.3d 1, 9 (1st Cir. 2011) (citing Medeiros v. Vincent, 431 F.3d

_____

[2] See Mills v. Maine, 118 F.3d 37, 47 (1st Cir. 1997) (defining "suspect class" as a "class of persons characterized by some unpopular trait or affiliation" that indicates a heightened likelihood of bias against them).

-10-

25, 29 (1st Cir. 2005). Defendants add that, even assuming that Plaintiffs alleged a plausible prima facie equal protection violation, the Board's action is rational to the extent that it intended to require aspiring doctors to demonstrate a minimum level of knowledge.

Having carefully examined their complaint, as amended, we find that Plaintiffs, as PRMLE examinees, have failed to plead that they are similarly situated to USMLE examinees or that any alleged classification violates their equal protection rights. Instead of alleging that the USMLE and the PRMLE are equivalent exams, Plaintiffs' admitted at oral argument that these are different exams. Despite this admission, Plaintiffs make the implausible assertion that the Board's "arbitrary" imposition of a 700-point passing score on the PRMLE, when compared to the 500-point passing score on the USMLE, automatically constitutes an equal protection violation. But, if the PRMLE and the USMLE are two different exams, comprising different questions, the fact that they use two different passing scores is insufficient to demonstrate a plausible equal protection violation. Takers of one exam are not equally situated with takers of the other exam.

"The formula for determining whether individuals or entities are similarly situated . . . is not always susceptible to precise demarcation. The line between sufficient facts and insufficient conclusions is often blurred ." Barrington Cove, 246

F.3d at 8 (alterations, citations, and internal quotation marks omitted). Nevertheless, the standard "is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Id. (quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989), overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 64 (1st Cir. 2004)).

Thus, we conclude that Plaintiffs' apples-to-oranges comparison, even when read in the light most favorable to them, does not pass Rule 12(b)(6) muster. Plaintiffs, as PRMLE takers, failed to plead an indicia of being similarly situated to takers of the USMLE. See Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999) ("The comparison cases need not be perfect replicas. . . . [But,] in offering . . . comparative evidence, [a plaintiff] bears the burden of showing that the individuals with whom he seeks to be compared have been subject to the same standards and have engaged in the same conduct . . . .") (internal quotation marks and citations omitted).

**2.    Rational Basis and the Equal Protection and Substantive Due Process Claims**

Plaintiffs' pleadings also fail to establish why such classification would be necessarily irrational, either for equal protection or substantive due process purposes. Because the analysis required for those two claims is the same, we examine them together. González-Droz, 660 F.3d at 9; Medeiros, 431 F.3d at

-12-

32-33. For both equal protection and substantive due process, when plaintiffs do not allege that a fundamental right is affected, they are required to show that the governmental infringement is not rationally related to a legitimate government purpose. Id.

Here, Plaintiffs do not allege that they belong to a suspect category or that obtaining a license to practice medicine is a fundamental constitutional right. See Medeiros, 431 F.3d at 32 ("The right to 'make a living' is not a 'fundamental right,' for either equal protection or substantive due process purposes." (quoting N.Y. State Trawlers Ass'n v. Jorling, 16 F.3d 1303, 1309-12 (2d Cir. 1994)). Therefore, their claim is within an area of social and economic policy, where a legislative "classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993). We need not examine what such reasonably conceivable state of facts may be because "[r]emedial choices made by . . . regulatory bod[ies] are . . . rebuttable only where the party challenging the . . . regulation can establish that 'there exists no fairly conceivable set of facts that could ground a rational relationship between the challenged classification and the government's legitimate goals.'" Medeiros, 431 F.3d at 30 (citing Wine and Spirits Retailers, Inc.

v. Rhode Island, 418 F.3d 36, 54 (1st Cir. 2005)).  Plaintiffs bear the burden of "negat[ing] any conceivable basis which might support" that set of "fairly conceivable" facts.  Donahue v. City of Boston, 371 F.3d 7, 16 (1st Cir. 2004) (quoting Beach Commc'ns, 508 U.S. at 315).

As we discussed above, Plaintiffs conceded at oral argument that the PRMLE and USMLE are substantively different tests, such that a 200-point difference in the minimum passing score could be rationally related to the substantive difference. And even though Plaintiffs do not "take issue . . . with the goals of Law 139" (i.e., do not dispute that the state had a legitimate government purpose in enacting the law), Plaintiffs alleged nothing that would indicate that this 200-point difference is so extreme as to be unjustified by the (unspecified) substantive differences between the two tests.  Plaintiffs thus fail to allege facts that could possibly negate the rational justification for the difference in scores.

Plaintiffs' complaint seemingly alleges an alternate classification.  Their complaint could reasonably be read to argue that the Board selected a different passing score on the basis that it knows that foreign-trained applicants tend to take the PRMLE, rather than the USMLE, treating them differently from U.S.-trained applicants, who tend to take the USMLE.  See Dkt. #25 at 15, ¶ 46 (Pls.' First Am. Compl.) ("Applicants for a medical license that

-14-

study in medical schools located in Puerto Rico usually take[] a test different than that required of applicants like the Plaintiffs that study in international schools." (emphases added)). That is, the Board meant to discriminate on the grounds that its Officers know that foreign-trained applicants will normally choose the PRMLE. Even assuming that Plaintiffs had carefully alleged that the Board intentionally discriminated against them for the sole reason of being foreign-trained applicants, classifying them on that basis, Plaintiffs' pleadings fail to establish why such classification would be necessarily irrational, either for equal protection or substantive due process purposes. As the district court suggested, the Board might have decided to impose a higher score to foreign-trained applicants because foreign schools may be subject to less demanding accreditation requirements. With a rigorous standardized test requirement, the state would not have to independently determine that every international medical school had accreditations or curricula equivalent to that of a domestic school. Plaintiffs do not negate these reasonings, which would be rational justifications. It suffices to say that Plaintiffs did not establish that under no conceivable set of circumstances their purported classification is reasonably related to the Defendants' interest in regulating the medical profession and protecting public health. Thus, Plaintiffs have failed to plead a plausible claim

for relief for violations of their equal protection or substantive due process rights.[3]

### 3. The Individual-Capacity Claims Against the Officers

Plaintiffs also request damages against the Officers for the same purported violations of their constitutional rights. Unlike an official-capacity § 1983 claim, in which the state itself is liable for damages, an individual-capacity § 1983 claim threatens the personal assets of the state officer only. See Hafer v. Melo, 502 U.S. 21, 25 (1991). For that reason, a state officer sued in his personal capacity cannot invoke a defense of sovereign immunity. See id. Here, however, the Officers have invoked a defense of official immunity, which is non-jurisdictional in nature. Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores-Galarza, 484 F.3d 1, 26 (1st Cir. 2007) (citing Erwin Chemerinsky, Federal Jurisdiction, § 7.5.2, at 429 (4th ed. 2003)). There are two types of official immunity: absolute immunity and qualified immunity. Absolute immunity completely bars Plaintiffs' ability to recover damages

---

[3] This is not to say that the Board can come up with a passing score "out of thin air." Indeed, the Board has to comply with several requirements under Puerto Rico law, which we do not address since Plaintiffs expressly waived all supplemental claims and because federal courts are constrained by the Eleventh Amendment from forcing the Commonwealth to comply with its own laws. See Cuesnongle v. Ramos, 835 F.2d 1486, 1497 (1st Cir. 1987).

from legislators in their legislative functions,[4] judges in their judicial functions, prosecutors, executive officers engaged in judicial functions (i.e., administrative law judges), and the President of the United States. See Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). Meanwhile, qualified immunity applies to general executive officials. See id.

Different from absolute immunity, which always bars damages, qualified immunity does not bar damages when Plaintiffs' pleadings plausibly demonstrate that (1) there was a violation of a constitutional right; and (2) the right was "clearly established" at the time of the alleged violation. Mlodzinski v. Lewis, 648 F.3d 24, 32 (1st Cir. 2011). To evaluate the second prong, we would also consider "whether the legal contours of the right in question where sufficiently clear that [a defendant] would have understood that what he was doing violated the right." Id. at 32-33 (citing Decotiis v. Whittemore, 635 F.3d 22, 36 (1st Cir. 2011); Pearson v. Callahan, 555 U.S. 223, 243 (2009) (holding that the requirements for qualified immunity can be applied in any order). We have already explained why the Plaintiffs' allegations, even if

---

[4] Relying on Bogan v. Scott-Harris, 523 U.S. 44, 53-54 (1998), the Officers argue that they receive absolute immunity because they enact policy, such as setting the PRMLE passing score by way of approving a regulation. Because we conclude that they would be protected from Plaintiffs' individual-capacity damages claim even under qualified immunity, we express no views on whether the Board members would receive absolute immunity in their quasi-legislative role.

taken as true, fail to establish any constitutional violation. Therefore, Defendants are clearly entitled to qualified immunity under the first prong.[5]

Consequently, we affirm the district court's dismissal of Plaintiffs' individual-capacity damages claim against the Officers under Rule 12(b)(6).

## III.  Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**

---

[5]  The district court also decided the qualified immunity issue by finding that there was no plausible deprivation of a clearly established constitutional right.