# United States Court of Appeals
## For the First Circuit

No. 20-1173

THOMAS A. RUSSOMANO,

Plaintiff, Appellee,

v.

NOVO NORDISK INC.,

Defendant/Third Party Plaintiff, Appellant,

v.

BIOMARIN PHARMACEUTICAL, INC.,

Third Party Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

S. Elaine McChesney, Bryan Killian, and Morgan, Lewis & Bockius LLP on brief for appellant.
Christopher M. Morrison and Jones Day on brief for appellees.

June 2, 2020

**LYNCH**, **Circuit Judge**. Pharmaceutical company Novo Nordisk Inc. ("Novo Nordisk") filed a motion for a temporary restraining order and preliminary injunction against Thomas Russomano, one of its former employees, and BioMarin Pharmaceutical, Inc. ("BioMarin"), another pharmaceutical company and Russomano's current employer. The motion sought to enforce the terms of a confidentiality and non-compete agreement that Russomano signed when he was employed at Novo Nordisk. The agreement forbade Russomano from working for a competitor in certain positions for a year after the end of his Novo Nordisk employment and from ever disclosing any confidential information.

The district court denied Novo Nordisk's motion because it found that Novo Nordisk could not show a likelihood of success on the merits. The court found that Russomano was likely no longer bound by the non-compete portion of the agreement because, by its terms, those provisions expired twelve months after the termination of Russomano's employment, and Novo Nordisk briefly laid him off in 2018 before rehiring him without having him sign a new non-compete agreement. Novo Nordisk argues that Russomano was not laid off in 2018 but instead transferred positions within the company, such that his employment was not terminated until Russomano resigned in early 2020. Finding no abuse of discretion, we affirm the district court's denial of Novo Nordisk's motion.

A.   Factual Background

Russomano began his employment with Novo Nordisk on January 25, 2016, as a Hemophilia Community Specialist for the New England region.  As a condition of his employment, he signed a confidentiality and non-compete agreement on December 14, 2015. The non-compete provisions applied "during [Russomano's] employment and for a period of twelve months following the termination of [his] employment for any reason, voluntary or involuntary."

On October 24, 2016, Novo Nordisk told Russomano that his position was being eliminated, and he would be laid off.  On November 18, 2016, Russomano's employment was terminated, along with all other fifteen to twenty employees in the same role.  He reapplied for open positions at Novo Nordisk, and after an approximately three-week period during which Novo Nordisk did not employ him, on December 8, 2016, the company rehired Russomano as a Hemophilia Therapy Manager for the Penn West region, encompassing New York, Pennsylvania, and West Virginia.

The job started on December 12, 2016.[1]  This position differed from his previous one in several ways.  His salary was higher, the region his position covered was larger, and he

_____

[1]     In June 2017, Russomano's territory was changed to New England.

interacted with patients less often. As a condition of being rehired, Russomano signed a second confidentiality and non-compete agreement on December 7, 2016, which was identical to the 2015 agreement.

Approximately a year and a half later, on June 20, 2018, Novo Nordisk sent Russomano a new letter informing him that it was eliminating his position and terminating his employment as part of a "realignment" of its business. The letter stated: "Based on the new operating model design, your position will be eliminated and your employment will end effective August 3, 2018 (the 'Separation Date')." The letter acknowledged that "one of [his] first priorities . . . will be finding new employment" and encouraged Russomano to apply for "a number of open positions throughout the organization." Finally, the letter discussed the conditions Russomano would need to meet in order to receive severance benefits, which included remaining in his role until the Separation Date, abiding by the company's rules and policies, and "not accept[ing] an alternate position with Novo Nordisk prior to the Separation Date."

Russomano then applied for open positions in the company and, after interviewing, was offered the different position of Senior Hemophilia Community Liaison -- New York, NY. Novo Nordisk sent Russomano a letter "formally confirm[ing his] transfer" to the new position. Russomano's start date in the new role was

"[e]ffective August 6, 2018," a Monday three days after the Friday end date specified in the earlier letter Novo Nordisk sent Russomano notifying him of his employment's termination. Russomano was not required to sign a new confidentiality and non-compete agreement as part of accepting this new job.

Senior Hemophilia Community Liaison was a new role within the organization. The offer letter Russomano received described the role as offering him "the opportunity to work with new colleagues and learn a new area." Russomano was no longer responsible for interfacing with prescribers and potential prescribers. The boundaries of his territory changed again. And his incentive compensation was decreased by more than ten thousand dollars.

Russomano resigned from his position at Novo Nordisk on January 6, 2020. His first day at BioMarin as a "Senior Account Manager -- Hemophilia Gene Therapy" was January 21, 2020.

B. Procedural History

Despite Russomano's request, Novo Nordisk declined to give Russomano written assurance that it did not intend to try to enforce the non-compete provisions of the agreement against him for his new role at BioMarin. In consequence, on January 9, 2020, Russomano sued Novo Nordisk in state court seeking a declaratory judgment that his future employment with BioMarin would not violate

a confidentiality and non-compete agreement he signed while working at Novo Nordisk.[2]

Novo Nordisk removed the case to federal court on January 15, 2020, and filed counterclaims against Russomano on January 21, 2020, for breach of contract, unfair competition, and misappropriation of trade secrets. The same day, it also filed a third-party complaint against BioMarin for tortious interference with a contract, unfair competition, and misappropriation of trade secrets.

On January 21, 2020, Novo Nordisk filed a motion for a temporary restraining order and preliminary injunction against Russomano and BioMarin. In its motion, Novo Nordisk asked the district court (1) to enjoin Russomano, for a year, from violating the terms of the Agreements; (2) to enjoin BioMarin, for a year, from employing Russomano in violation of the Agreements; and (3) to enjoin Russomano and BioMarin from "using, disclosing or misappropriating" confidential information. Russomano and BioMarin opposed the motion on January 21 and 24, 2020.

The district court heard testimony on Novo Nordisk's motion on January 27 and 28, 2020. Russomano testified, as did John Cones, the BioMarin employee who recruited and hired

---

[2] Russomano's complaint only mentioned the 2015 confidentiality and non-compete agreement. The district court proceedings have since made clear that he signed a second identical agreement in 2016.

Russomano, and Tammy Shelor-Blain, a Novo Nordisk BioPharm Region Director who supervised Hemophilia Therapy Managers and Community Liaisons like Russomano. The parties submitted evidence including declarations from Russomano, Cones, Shelor-Blain, and Keith Middleton, a Novo Nordisk Human Resources employee.

The court denied Novo Nordisk's motion for a temporary restraining order and preliminary injunction on February 5, 2020. It wrote that "at this stage," based on a "review of the evidence presented," Russomano's employment subject to his December 7, 2016, agreement with Novo Nordisk was terminated on August 3, 2018. The court viewed the language Novo Nordisk used in its letter notifying Russomano that his position would be eliminated as unambiguous, and it rejected Novo Nordisk's argument that the termination of Russomano's employment was conditional upon him not finding a new position with the company. It found that the twelve-month non-compete provisions he agreed to in 2016 had expired in August 2019, twelve months after he left his position in August 2018, and Russomano thus was free to work in any role at BioMarin.[3]

Novo Nordisk timely appealed the district court's denial of the preliminary injunction on February 7, 2020. We have jurisdiction under 28 U.S.C. § 1292(a)(1).

---

[3] The court noted that the confidentiality provisions extend indefinitely and are still in effect.

II.

A.    Standard of Review and Choice of Law

A trial court ruling on a motion for a preliminary injunction must consider the following four factors: "'the movant's likelihood of success on the merits'; 'whether and to what extent the movant will suffer irreparable harm' in the absence of injunctive relief; 'the balance of [relative] hardships,' that is, the hardship to the nonmovant if enjoined as opposed to the hardship to the movant if no injunction issues; and 'the effect, if any, that an injunction [or the lack of one] may have on the public interest.'"  CVS Pharmacy, Inc. v. Lavin, 951 F.3d 50, 55 (1st Cir. 2020) (alterations in original) (quoting Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9, (1st Cir. 2013)).

Novo Nordisk's likelihood of success on the merits is the factor that "weighs most heavily in the preliminary injunction analysis."  Id. (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)).  "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."  Maine Educ. Ass'n Benefits Tr. v. Cioppa, 695 F.3d 145, 152 (1st Cir. 2012) (alteration in original) (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)).[4]

_____

[4]    Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), says it requires the movant to show "that he is

- 8 -

We review the district court's ruling on a motion for a preliminary injunction for abuse of discretion. <u>Voice of the Arab World, Inc.</u> v. <u>MDTV Med. News Now, Inc.</u>, 645 F.3d 26, 31 (1st Cir. 2011). Within that framework, "we examine legal questions de novo, findings of fact for clear error, and the balancing of the four factors for abuse of discretion." <u>CVS Pharmacy, Inc.</u>, 951 F.3d at 55.

When evaluating the likelihood of success on the merits in a diversity case, we apply state law for the substantive rules of decision. <u>Id.</u> at 55 n.4. Novo Nordisk argues that the appropriate law to apply is New Jersey law because the confidentiality and non-compete agreement specified that New Jersey law should apply. Russomano and BioMarin argue that under Massachusetts law, the law of the forum state, the choice-of-law provision is invalid because Russomano did not have a meaningful

---

likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Id.</u> at 20. Some have suggested that <u>Winter</u> may well allow variations of this formulation. <u>See</u> <u>id.</u> at 51 (Ginsburg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high. This Court has never rejected that formulation, and I do not believe it does so today."); <u>see generally</u> Bethany M. Bates, Note, <u>Reconciliation After Winter: The Standard for Preliminary Injunctions in Federal Courts</u>, 111 Colum. L. Rev. 1522, 1537-48 (2001) (surveying other circuits' approaches). The approach taken is immaterial here. The likelihood of success on the merits is so low, as we further discuss below, that it would overwhelm any of the other factors.

choice in accepting this term and, separately, it would violate Massachusetts public policy to continue to enforce a non-compete agreement after there was a material change in Russomano's employment at Novo Nordisk. They argue that Massachusetts law should apply instead.

The district court declined to determine which state law applied because the states' laws are substantially similar for these purposes, and it cited cases from both New Jersey and Massachusetts in its analysis.[5] See Darr v. Plaintiffs' Interim Exec. Comm. (In re TelexFree), 941 F.3d 576, 584 n.5 (1st Cir. 2019) ("[W]hen the result in a case will not be affected by the choice of law, an inquiring court, in its discretion, may simply bypass the choice." (alteration in original) (quoting Lexington Ins. Co. v. Gen. Accident Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003))). We agree and do the same.

B. There Was No Error in the District Court's Conclusion that Novo Nordisk's Termination Letter Was Unambiguous that Russomano's Employment Ended on August 2, 2018

We review legal conclusions, such as the interpretation of an unambiguous written legal instrument, de novo. See VFC Partners 26, LLC v. Cadlerocks Centennial Drive, LLC, 735 F.3d 25, 29 (1st Cir. 2013); see also Kieffer v. Best Buy, 14 A.3d 737, 742 (N.J. 2011); Bank v. Thermo Elemental Inc., 888 N.E.2d 897, 907

_____

[5] Novo Nordisk conceded the states' laws are "substantially similar" to the district court.

- 10 -

(Mass. 2008).  The district court found that the June 20, 2018, letter Novo Nordisk sent Russomano unambiguously terminated his employment.

Novo Nordisk does not contest that "for Russomano to continue to be bound not to compete beyond 2019 Novo Nordisk would have needed to ensure there was no break in employment." (Alterations omitted.)  Rather, it argues that the terms of the letter are ambiguous and Russomano was continuously employed between December 8, 2016, when he was rehired for the first time, and January 6, 2020, when he resigned to work for BioMarin.

This argument is without merit.  The district court did not err in concluding that the letter laying Russomano off was unambiguous when it stated that his employment ended "effective August 3, 2018."  The letter offering him a new position was also unambiguous: his new position was "[e]ffective August 6, 2018." The word "effective" has a clear meaning in this context.  See Effective, Black's Law Dictionary (11th ed. 2019) (defining "effective" as "in operation at a given time").  Russomano's employment thus "terminat[ed]" as per the terms of the confidentiality and non-compete agreement in August 2018, and he is free to work for BioMarin as of August 2019.[6]

_____

[6]     In its reply brief, Novo Nordisk argues for the first time that its June 20, 2018, letter notifying Russomano that it was terminating his employment can be construed as merely an offer to terminate his employment, which Russomano rejected when he

- 11 -

We need not go farther in our analysis.  Where language is unambiguous, resort to extrinsic evidence is unnecessary.  <u>See</u> <u>EventMonitor, Inc.</u> v. <u>Leness</u>, 44 N.E.3d 848, 856 (Mass. 2016) ("A reviewing court considers extrinsic evidence only when a term in a contract is ambiguous." (citing <u>Mass. Mun. Wholesale Elec. Co.</u> v. <u>Danvers</u>, 577 N.Ed.2d 283, 289 (Mass. 1991)));[7] <u>Barila</u> v. <u>Bd. of Ed. of Cliffside Park</u>, No. A-39-18, 2020 WL 1907814, at *12 (N.J. Apr. 20, 2020) ("[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the

accepted his new position at the company.  This and the other related arguments made for the first time in the reply brief are waived.  <u>See</u> <u>United States</u> v. <u>Mayendía-Blanco</u>, 905 F.3d 26, 32 (1st Cir. 2018) ("[A]rguments not raised by a party in its opening brief are waived.").

[7]    We do not foreclose the possibility that Massachusetts courts might, in appropriate circumstances, refer to extrinsic evidence to help determine whether the text of an agreement is ambiguous or not.  <u>See, e.g.</u>, <u>Robert Indus., Inc.</u> v. <u>Spence</u>, 291 N.E.2d 407, 409 (Mass. 1973) (acknowledging that "[a] lease is to be read in the light of the circumstances of its execution, which may enable the court to see that its words are really ambiguous"); <u>see generally</u> Restatement (Second) of Contracts § 214(c) (Am. Law. Inst. 1981) (allowing extrinsic evidence not only to help with interpretation of facially ambiguous language but more broadly to establish "the meaning of the writing, whether or not integrated"); <u>id.</u> cmt. b ("Even though words seem on their face to have only a single possible meaning, other meanings often appear when the circumstances are disclosed.  In cases of misunderstanding, there must be inquiry into the meaning attached to the words by each party and into what each knew or had reason to know.").

agreement as written, unless doing so would lead to an absurd result." (quoting Quinn v. Quinn, 137 A.3d 423, 429 (N.J. 2016))).[8]

Novo Nordisk's efforts to find ambiguity in its letter are unavailing. The company argues that the termination of Russomano's employment was conditional on him not securing another role within the company. Specifically, it argues that "[t]he letter did not unambiguously terminate Russomano; rather, the letter stated that Russomano's job position was going to be eliminated and that Russomano's employment would be terminated if he did not transfer to another position within the company." Not so.

The only conditional language in the letter was in reference to the severance benefits, which were only available to Russomano if he met certain conditions, including "not accept[ing] an alternate position with Novo Nordisk prior to the Separation Date." There was no conditional language in the part of the letter informing Russomano that his "employment will end." This explains

_____

[8]    Similarly, under New Jersey law, although "[i]f the language of a contract 'is plain and capable of legal construction, the language alone must determine the agreement's force and effect,'" Manahawkin Convalescent v. O'Neill, 85 A.3d 947, 958-59 (N.J. 2014) (quoting Twp. of White v. Castle Ridge Dev. Corp., 16 A.3d 399, 403 (N.J. Super. Ct. App. Div. 2011)), "[e]ven in the interpretation of an unambiguous contract, we may consider 'all of the relevant evidence that will assist in determining [its] intent and meaning,'" id. at 959 (alteration in original) (quoting Conway v. 287 Corp. Ctr. Assocs., 901 A.2d 341, 346 (N.J. 2006)).

- 13 -

why his employment was terminated but he did not receive severance benefits.

Likewise, a passing reference to Russomano's "transfer" in the letter Novo Nordisk sent rehiring him is not enough to undermine its clear references to the "end" of his employment with the company in the termination letter and later his "new position."

Although we need not consult extrinsic evidence to confirm that Russomano's employment was terminated briefly in 2018, the available extrinsic evidence supports this interpretation. Novo Nordisk concedes that it laid off Russomano in 2016, and the circumstances surrounding the termination of Russomano's employment in 2016 are quite similar to what happened to him in 2018.

Both times he was laid off as a result of restructuring. Both times Russomano had to re-apply for open positions in the organization with no guarantee of being re-hired. His new roles were both markedly different than his previous ones. Both times he received a new title and different compensation, and he worked with different populations and in different geographic areas.

Novo Nordisk argues that Russomano effectively conceded that his employment with the company was not terminated and instead he merely was transferred when Russomano testified at the motion hearing, "I was definitely not unemployed." This argument is misleading. Before stating he was "not unemployed," Russomano

attempted to clarify the terms of the question, asking, "Meaning like leaving the company? . . . Having a gap?" Only after the lawyer agreed to that definition did Russomano say he was "not unemployed." Russomano also added afterwards, "I thought of it as a termination since we did receive, you know, the notice and the layoff notice and things like that."

We see no abuse of discretion in the district court's finding that Novo Nordisk was not likely to succeed on the merits. Nor do we find any abuse of discretion in its decision not to analyze the remaining factors in the test for a preliminary injunction before denying the motion, particularly because Novo Nordisk's likelihood of success is so low.

### III.

The district court's denial of Novo Nordisk's motion for a temporary restraining order and preliminary injunction is affirmed. Costs are awarded to Russomano and BioMarin.