# United States Court of Appeals
## For the First Circuit

No. 24-1649

BECKY'S BRONCOS, LLC; JAMES BROAD; REBECCA MCCRENSKY,

Plaintiffs, Appellants,

v.

TOWN OF NANTUCKET; NANTUCKET TOWN SELECT BOARD,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Angel Kelley, U.S. District Judge]

Before

Rikelman, Selya,* and Kayatta,
Circuit Judges.

Lucas Newbill, with whom Law Offices of Lucas Newbill was on brief, for appellants.
Matthew J. Hamel, with whom Jason W. Crotty and Pierce Davis & Perritano LLP were on brief, for appellees.

May 23, 2025

---

* Judge Selya heard oral argument in this matter and participated in the semble, but he does not participate in the issuance of the panel's decision. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).

**KAYATTA**, **Circuit Judge**. In 2023, James Broad and Rebecca McCrensky began operating a car-rental agency, Becky's Broncos, LLC (collectively with Broad and McCrensky, "Becky's"), without the requisite approval from local authorities -- the Town of Nantucket and Nantucket Town Select Board (collectively, "Nantucket"). Nantucket soon ordered Becky's to stop its unsanctioned car-rental operations, prompting Becky's to seek preliminary injunctive relief in the District of Massachusetts. For the following reasons, we affirm the district court's denial of Becky's request.

## I.

In 1988, Nantucket adopted a barebones licensing-and-fee plan for rental cars on the Island of Nantucket (the "Island"). The plan barred unlicensed rental-car operations and instructed Nantucket to "issue a license to each approved applicant," contingent on payment of a $100 annual fee per rental motor vehicle. Later that year, Massachusetts passed a special act retroactively approving the plan and authorizing Nantucket to adopt implementing bylaws in the future.

In 1997, Nantucket amended the plan by introducing a capped medallion system. The amendment provided:

> The total number of motor vehicles available for lease on the [Island] shall not exceed six hundred fifty (650). [Nantucket] shall issue each rental agency one Rental Vehicle Medallion (RVM) for each motor vehicle listed

- 2 -

in its 1996 application and which received a rental sticker. Each RVM constitutes the non expiring right to lease [out] one motor vehicle.

Thus, per local law (the "ordinance"), to operate on the Island, a rental agency requires both an agencywide license and a medallion for each vehicle it operates. According to Becky's, only six companies -- five local firms and the national brand Hertz -- had submitted license applications in 1996 and were thus entitled to medallions in 1997.

Nantucket subsequently raised the medallion cap to 700 but otherwise left it substantively unchanged. Today, five local companies hold 382 medallions, Hertz holds 310 medallions, and eight medallions have reverted to Nantucket. The five local companies appear to overlap with -- or be successors-in-interest to -- the five local operators that obtained medallions in 1997. Under the ordinance, Nantucket retains discretion to "re-issue[]," "retain[]," or "retire[]" unapportioned medallions. Nantucket provides no process for awarding licenses to new agencies or for reissuing the eight medallions that it has retained since 2021.

Becky's began operating on the Island in 2023. The company rented out two vehicles without a license or medallions, and Nantucket ordered it to shut down at the end of the tourism season. While this order apparently conformed with Nantucket's treatment of other unlicensed, unmedallioned operators, it

differed from Nantucket's permissive attitude toward Turo -- an online platform through which individuals can rent out their personal vehicles. Claiming that the ordinance may not cover Turo's facilitation of peer-to-peer rentals, Nantucket allows Turo rentals without licenses or medallions. In June 2024, local vehicle owners offered 162 cars for rent on Turo, despite possessing no licenses or medallions.

In May 2024, Becky's sued Nantucket for monetary and injunctive relief. Two weeks later, Becky's moved for a temporary restraining order and preliminary injunction against Nantucket's enforcement of the ordinance against Becky's. The following month, the district court held a hearing at which the parties debated the motion. The court issued a memorandum and order denying the motion one month later. Becky's Broncos, LLC v. Town of Nantucket, No. 24-cv-11308, 2024 WL 3402769, at *1 (D. Mass. July 12, 2024). Becky's timely appealed the district court's denial of a preliminary injunction.

## II.

When ruling on a motion for a preliminary injunction, a district court must consider four factors: (1) "the movant's likelihood of success on the merits," (2) "whether and to what extent the movant will suffer irreparable harm in the absence of injunctive relief," (3) "the balance of relative hardships," and (4) "the effect, if any, that an injunction or the lack of one may

have on the public interest." Russomano v. Novo Nordisk Inc., 960 F.3d 48, 52 (1st Cir. 2020) (cleaned up). "The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor." Esso Standard Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006). That said, "the four factors are not entitled to equal weight in the decisional calculus; rather, likelihood of success is the main bearing wall of the four-factor framework." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9-10 (1st Cir. 2013) (cleaned up).

"We review the district court's ruling on a motion for a preliminary injunction for abuse of discretion. Within that framework, we examine legal questions de novo, findings of fact for clear error, and the balancing of the four factors for abuse of discretion." Russomano, 960 F.3d at 53 (quotation marks and citations omitted). When a district court denies a preliminary injunction and the movant "do[es] not argue on appeal that the [other three factors] mandate an injunction even if [its] claims are not likely to succeed on the merits," we may rest an affirmance solely on an unlikelihood-of-success holding. Ocean State Tactical, LLC v. Rhode Island, 95 F.4th 38, 43 (1st Cir. 2024); see also Santiago v. Municipality of Utuado, 114 F.4th 25, 42 (1st Cir. 2024) (similar).

**III.**

Becky's advances four arguments as to why it will likely succeed on the merits. We address each in turn and hold that Becky's has not demonstrated reversible error.

**A.**

Becky's first contends that the ordinance violates the dormant Commerce Clause, which bars states and localities from pursuing "economic protectionism -- that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273 (1988). To ascertain whether a regulatory measure is so designed, we look for evidence of "either discriminatory purpose or discriminatory effect," recognizing "the primacy of [the latter] in the dormant Commerce Clause analysis of facially neutral legislation." Am. Trucking Ass'ns v. R.I. Tpk. & Bridge Auth., 123 F.4th 27, 36-37 (1st Cir. 2024) (citation omitted).

Becky's argues that the ordinance discriminates in effect because, as applied, it "insulates from competition five in-state companies and one out-of-state company doing business as a local one." At the threshold, Nantucket suggests that Becky's status as an in-state company means that it cannot trace its alleged harms to the ordinance and therefore lacks Article III standing. See Wine & Spirits Retailers, Inc. v. Rhode Island, 481 F.3d 1, 12 (1st Cir. 2007). We disagree. Becky's clearly asserts

an injury directly caused by the ordinance and that would be redressed by an injunction against the ordinance. Cf. Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 183 (1st Cir. 1999) ("In Commerce Clause jurisprudence, cognizable injury is not restricted to those members of the affected class against whom states or their political subdivisions ultimately discriminate."). Nantucket also appears to suggest that Becky's cannot assert this claim because its injuries lie outside the zone of interests protected by the dormant Commerce Clause. Cf. City of Los Angeles v. County of Kern, 581 F.3d 841, 845, 846-49 (9th Cir. 2009). However, even assuming that such an argument is tenable under Supreme Court precedent, we need not reach it because we conclude that Becky's claim fails on the merits. See Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 638 (1st Cir. 2013).

As for the merits, in a paradigmatic case involving unconstitutional discriminatory effect, a court considers whether "the [challenged] law chills interstate activity by creating a commercial advantage for goods or services marketed by local private actors." Dep't of Revenue of Ky. v. Davis, 553 U.S. 328, 347 (2008). Before the district court, "[t]he proponent of a dormant Commerce Clause claim bears the burden of proof as to discrimination." All. of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 40 (1st Cir. 2005). We treat a district court's finding of "no compelling evidence of discriminatory effect" as a factual finding

entitled to respect unless "clearly erroneous." Wine & Spirits, 481 F.3d at 14.

Becky's has not met its burden of showing that the district court clearly erred in finding insufficient evidence of discriminatory effect.[1]  The district court weighed Becky's evidence -- the history of the ordinance, its early implementation, the role played by Hertz, and the lack of enforcement against Turo -- to conclude that Becky's failed to meet its evidentiary burden.  See Becky's Broncos, 2024 WL 3402769, at *3–4.

We cannot fault this analysis.  At bottom, the record before the district court evinces an ordinance that favors incumbents regardless of their status as in-state or out-of-state businesses.  It takes no toll on interstate commerce rising to the level of discrimination.  In fact, an out-of-state enterprise owns nearly half of the extant medallions.  And Becky's produces no evidence that any out-of-state enterprises seek to rent out additional cars on the Island.  Instead, the record indicates that only one company currently seeks a new license and medallions: Becky's, a local company.  In other words, as the record stands,

---

[1] Becky's argues that the district court made no such finding -- i.e., that the court cabined its analysis to "discriminatory intent" and "gloss[ed] over the fact that a law can be discriminatory based on" effect.  We read the district court's opinion differently:  The court laid out the proper legal standard and found insufficient evidence of both discriminatory intent and discriminatory effect.  See Becky's Broncos, 2024 WL 3402769, at *3.

no out-of-state enterprise alleges a burden from being unable to participate more fully in the Island's car-rental marketplace. We thus discern no basis upon which to conclude that the district court clearly erred in finding insufficient evidence of discriminatory effect.[2]

**B.**

Becky's next argues that the ordinance runs afoul of federal and state antitrust law by "unreasonably restrain[ing] trade." In rejecting this argument, the district court relied on the doctrine of state-action immunity, Becky's Broncos, 2024 WL 3402769, at *4, which exempts from the Sherman Antitrust Act and the Massachusetts Antitrust Act certain state and municipal actions, see Parker v. Brown, 317 U.S. 341, 350-52 (1943); Mass. Gen. Laws ch. 93, § 7 (2025) (exempting from the Massachusetts Antitrust Act "[a]ny activities which are exempt from any of the federal antitrust laws"). Rather than addressing the district court's rationale that the doctrine of state-action immunity shields the ordinance, we exercise our prerogative to affirm the district court on an alternative ground, raised by Nantucket on

---

[2] These same facts lead us to conclude that Becky's has not shown a likelihood of success under its theory that the ordinance imposes a burden on interstate commerce that "is clearly excessive in relation to [its] putative local benefits." Fam. Winemakers of Cal. v. Jenkins, 592 F.3d 1, 9 n.9 (1st Cir. 2010) (citation omitted) (describing the test from Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)).

appeal, that is manifest in the record.[3]  See United States v. Sirois, 119 F.4th 143, 152 (1st Cir. 2024).

The Sherman Antitrust Act, 15 U.S.C. §§ 1-7, contains two main regulatory provisions:  "Section 1 applies only to concerted action that restrains trade.  Section 2, by contrast, covers both concerted and independent action, but only if that action monopolizes or threatens actual monopolization, a category that is narrower than restraint of trade."  Am. Needle, Inc. v. NFL, 560 U.S. 183, 190 (2010) (cleaned up).  In its complaint, Becky's alleges that "[t]he actions of Defendants complained of herein violate the Sherman Act, 15 U.S.C. §§ 1, 2."  Becky's does not distinguish between the two sections or offer any specific allegations from which we can deduce the theory of antitrust liability on which its claim rests.  Becky's appellate briefs take a similarly nonspecific approach.

At the preliminary-injunction stage, Becky's "bears the burden of establishing" a likelihood of success on the merits. Esso Standard Oil, 445 F.3d at 18.  In the absence of a concrete theory of the merits from Becky's, we cannot possibly conclude that Becky's has shown that it will likely succeed on the merits of its claim.

---

[3]  Becky's asks that we declare the district court's state-action-immunity holding erroneous, even if we affirm its decision on other grounds.  We decline this invitation and therefore do not reach the parties' state-action-immunity arguments.

## C.

Becky's briefly advances a procedural due process argument that Nantucket has impermissibly infringed its "property interest" in a license because, in its view, the ordinance "<u>requires</u> the Select Board to issue a license to all paying applicants."  But even if we accept Becky's interpretation of the ordinance's licensing provision, Becky's offers no similar argument concerning the ordinance's medallion provision.  Indeed, the ordinance only mandates that Nantucket issue medallions to rental agencies that received licenses in 1996,[4] and it allows Nantucket to "re-issue[]," "retain[]," or "retire[]" unapportioned medallions as it sees fit.

Because Becky's requires both a license and medallions to operate, and because it develops no claim to a "property interest" in medallions, it cannot secure preliminary injunctive relief under its procedural due process argument.

## D.

Finally, Becky's presses a substantive due process challenge.  Because Becky's does not assert a fundamental liberty

---

[4] "[Nantucket] shall issue each rental agency one rental vehicle medallion (RVM) for each motor vehicle listed in its 1996 [license] application and which received a rental sticker."

- 11 -

interest,[5] we subject the ordinance to rational basis review.[6] See Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 107 (1st Cir. 2015). Thus, we must rule against Becky's if "any reasonably conceivable state of facts . . . could provide a rational basis for the" ordinance. Id. (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)).

Nantucket justifies the ordinance as a means of alleviating "parking, traffic safety, open space, and congestion concerns." Nantucket has produced evidence to substantiate those concerns, and we have previously recognized "traffic safety and community aesthetics" as "constitut[ing] significant governmental interests." Naser Jewelers, Inc. v. City of Concord, 513 F.3d 27, 34 (1st Cir. 2008). The ordinance, which directly limits the number of rental cars on Nantucket's roads, "rationally relate[s] to [these] legitimate government" interests. Mulero-Carrillo, 790 F.3d at 107. And Nantucket has rationally explained its decision not to enforce the ordinance against Turo, citing both legal issues and enforcement-capacity concerns. Indeed, Nantucket's position

_____

[5] On reply, Becky's calls our attention to Broad and McCrensky's fundamental right to associate as a family. Becky's has waived this argument by raising it for the first time on reply, and we thus do not address it. See Bekele v. Lyft, Inc., 918 F.3d 181, 186 (1st Cir. 2019).

[6] Nantucket argues that an even laxer standard applies. Because we conclude that the ordinance survives rational basis review, we need not decide whether Nantucket is correct.

that the ordinance cannot reach Turo only magnifies Nantucket's desire to minimize other sources of traffic, such as Becky's.

## IV.

Discerning no reversible error in the district court's unlikelihood-of-success-on-the-merits holding, we <u>affirm</u> its denial of Becky's motion for a preliminary injunction.